481 P.2d 867

STATE LAND DEPARTMENT, Appellant,

v.

TUCSON ROCK AND SAND COMPANY, Appellee.

No. 10128–PR.

Supreme Court of Arizona; In Banc.

March 5, 1971.

Gary K. Nelson, Atty. Gen. by Dale R. Shumway, Special Asst. Atty. Gen., Phoenix, for appellant.

Bilby, Thompson, Shoenhair & Warnock by Marvin S. Cohen, Tucson, for appellee.

Evans, Kitchel & Jenckes, G. Henry Ladendorff, Twitty, Sievwright & Mills, Phoenix, Verity & Smith, Tucson, amici curiae.

STRUCKMEYER, Chief Justice.

This action arises out of the cancellation of State Mineral Lease M–109 issued for a 20-year term to appellee Tucson Rock and Sand Company. From the cancellation by the State Land Commissioner, Tucson Rock and Sand appealed to the Superior Court of Pima County. That court set aside the order of cancellation. The Court of Appeals reversed, and we accepted review. Opinion of the Court of Appeals, 12 Ariz. App. 193, 469 P.2d 85 vacated.

In 1952, appellee was issued a State Mineral Lease. By it, appellee was required to pay the State of Arizona a royalty of five cents for each cubic yard of sand, rock and gravel removed from the State lands covered by the lease. In June of 1967, the State Land Department determined that the value of sand, rock and gravel was 9.5 cents per ton. It thereafter refused to accept appellee's tender of payment of royalties based on five cents per cubic yard, and when payment was refused on the basis of 9.5 cents per ton, the lease was cancelled.

By the Act of June 20, 1910, Ch. 310, 36 Stat. 557, Congress enacted enabling legislation by which the people of the territories of Arizona and New Mexico were authorized to form state governments. Congress granted to Arizona certain federal lands for the support of common schools and for internal improvement of the new state. Mineral lands were not, however, granted, but reserved to the United States. Campbell v. Flying V Cattle Company, 25 Ariz. 577, 589, 220 P. 417; § 24 of 36 Stat., supra, and see Art. X, §§ 4, 5 and 8 of the Constitution of Arizona, A.R.S.

By § 28 of Arizona's Enabling Act, Congress "declared that all lands hereby granted * * * shall be by the said State held in trust, to be disposed of in whole or in part only in the manner as herein provided", and the disposition of

any of the lands granted "in any manner contrary to the provisions of this Act, shall be deemed a breach of trust." Section 28 of the Act also provided that the "said lands shall not be sold or leased, in whole or in part, except to the highest and best bidder at a public auction" and that no "sale or contract for the sale of any timber *or other natural product of such lands* be made save at the place, in the manner, and after notice by publication provided for sales and leases of the lands themselves; ". [Emphasis added] Section 28 specifically provided:

> "All lands, leaseholds, timber and other *products of land,* before being offered shall be appraised at their true value, and no sale or other disposal thereof shall be made for a consideration less than the value so ascertained, * * *." [Emphasis added]

It is clear that Congress imposed upon Arizona the obligation to appraise "timber and other products of land" before their sale or other disposal in order that the sale or disposal would not be at less than the true appraised value.

As stated, appellee claims its rights through State Lease No. M–109. This lease is a placer lease of 160 acres and is on a printed form with the title "Mineral Lease". It contains all of the provisions for royalties and conditions as set forth in the statute for mineral leases, about which more will be said later. Mineral leases have had legislative authorization for many years. *See* § 27–231, et seq., A.R.S. 1956 and discussion *infra.* Whether sand, rock and gravel are minerals, so as to be subject to a mineral lease under the Arizona statute, is the question at issue here.

It has been held both that sand, rock and gravel are minerals, Robinson v. Wheeling Steel & Iron Co., 99 W.Va. 435, 129 S.E. 311, and that they are not minerals, Whittle v. Wolff, 249 Or. 217, 437 P.2d 114. The word "mineral" is used in so many senses, dependent upon the context, that the ordinary definitions such as those provided by dictionaries throw but little light

on the significance in a given case; and, therefore, the word is susceptible to limitation or expansion according to the intention with which it is used in the particular instrument or statute. Puget Mill Co. v. Duecy, 1 Wash.2d 421, 96 P.2d 571, and *see* Northern Pacific Railway Co. v. Soderberg, 188 U.S. 526, 23 S.Ct. 365, 47 L.Ed. 575.

Arizona became a state on February 14, 1912, but it was not until 1915, in its Second Legislature, Second Special Session, that Arizona adopted a public land code. There was thereby created a State Land Department with authority to execute leases and contracts for the leasing of State lands containing "gold, silver, copper, lead or other valuable minerals, or for any land containing shale, slate, petroleum, natural gas, or other valuable natural deposits * * *." Law of June 26, 1915, 2d Spec.Sess., Ch. 5, § 38, page 27. Section 38 did not, however, specifically provide for the disposal of sand, rock or gravel. This was provided for in § 75, under the title "Products of Land". It read:

> "The commissioner [State Land Commissioner] shall have the authority and it shall be his duty to care for, sell or otherwise administer the timber products, stone, gravel, and other products and property upon the lands belonging to the State, under such rules and regulations, not in conflict with the Enabling Act, and of the Constitution of the State of Arizona, as the commissioner may prescribe."

In the Revised Code of 1928, § 75 was consolidated with § 76, becoming § 3003 under Article 5, "Products of State Lands", and then became § 11–501, A.C.A.1939, and finally § 37–481, A.R.S.1956. Section 37–481 presently provides:

> "Conservation and administration of products of state lands
>
> The state land department shall conserve, sell or otherwise administer the timber products, stone, gravel and other products and property upon lands belonging to the state under rules and regula-

tions not in conflict with the enabling act and the constitution, and conforming as nearly as possible to the rules and regulations of the forest service of the United States department of agriculture."

It is clear that the Arizona Legislature, almost from statehood, has construed the words of the Enabling Act, "other products of land", as including sand, stone and gravel, and has not included sand, stone and gravel within the leasing of minerals.

Appellee relies on the language of A.R.S. § 27–231 et seq., formerly § 11–1601 et seq., and in particular § 11–1604, A.C.A. 1939, 1952 Cum.Supp. The statutory scheme by which minerals can be removed from State lands is that a discoverer of a valuable mineral deposit may locate it as a mineral claim. The locator is then given a preferred right to a mineral lease covering each claim. At the time this claim was issued, the State received as consideration:

"(a) The rental of a mineral lease of state lands shall be fifteen dollars [$15.-00] per annum, * * *. (b) Every mineral lease of state land shall provide for payment to the state by the lessee of a royalty of five [5] per cent of the net value of the minerals produced from the claim. * * * Provided that in the case of sand, rock and gravel to be used in the construction of roads, building or other structures the royalty shall be such amount as shall be determined by the state land commissioner under reasonable rules and regulations to be promulgated by him but not more than five cents [5¢] per cubic yard. * * *" § 11–1604 A.C. A.1939, as amended.

█ It is apparent that § 11–1604, A.C.A. 1939, Cum.Supp.1952 (§ 27–234, subsec. C, A.R.S.1956) and § 11–501, A.C.A.1939 (§ 37–481, A.R.S.1956) are at least ostensibly in conflict. But where statutes *in pari materia* are in apparent conflict, the customary rules of construction require that they should, as far as possible, be construed in harmony so as to give force and effect to each. We said in Ard v. State, 102 Ariz. 221, 427 P.2d 913:

"Where sound reason and good conscience will allow, this court has a duty to harmonize statutes where there is a possibility of conflict."

█ It is the rule, one so solidly embedded in American jurisprudence to be without exception, that a court will not construe a statute as repealed by implication by another if it can avoid doing so on any reasonable hypothesis. State v. Chalmers, 100 Ariz. 70, 411 P.2d 448; State v. Morf, 80 Ariz. 220, 295 P.2d 842; Ariz. Corp. Comm. v. Catalina Foothills Estates, 78 Ariz. 245, 278 P.2d 427; Industrial Comm. v. Hartford Accident and Indemnity Co., 61 Ariz. 86, 144 P.2d 548; Southern Pac. Co. v. Gila County, 56 Ariz. 499, 109 P.2d 610. Different statutes bearing on the same subject matter will be construed, if possible, to give effect to both. Ariz. Corp. Comm. v. Catalina Foothills Estates, *supra*.

█ And it is to be recognized that where a statute expressly repeals a specific act, the naming of those to be superseded is indicative of an intention not to repeal or interfere with the operation of others. Commonwealth v. Bloomberg, 302 Mass. 349, 19 N.E.2d 62. The naming of a statute to be superseded indicates that the legislature did not consider that another statute was in conflict with the new act, Lindsey v. Superior Court, 33 Wash.2d 94, 204 P.2d 482. In the instant case, Arizona's Seventeenth Legislature, by Laws of 1945, Ch. 87, §§ 1–6, in amending § 11–1601, et seq., Cum. Supp.1952, specifically repealed § 11–1606, but did not repeal § 11–501 A.C.A.1939, *supra*.

█ Moreover, the principle of no repeal by implication is particularly strong where the statute which is claimed to be repealed is of long standing, Ziegler v. Witherspoon, 331 Mich. 337, 49 N.W.2d 318; Pattermann v. City of Whitewater, 32 Wis. 2d 350, 145 N.W.2d 705, and where the subsequent action of the legislature shows that the legislature deemed that the statute was still in existence, Sailer v. State, 192 Ark. 514, 92 S.W.2d 382. Here, § 11–501 A.C.A.

1939 (37–481) has been in existence since 1915 and was re-enacted in 1956.

■ It is therefore our conclusion that it was the Legislature's intention for § 37–481 to control the disposition of sand, rock and gravel on State lands.

We believe that the proviso above quoted, to be found in § 11–1604, may be harmonized in this fashion. As pointed out, § 38 of the Public Land Code of 1915 authorized the leasing of State lands containing gold, silver, copper, etc., but did not authorize the leasing of lands containing usable sand, rock and gravel. Section 38 was continued through the Revised Code of 1928 as § 2973 and the Annotated Code of 1939 as § 11–314. On June 5, 1936, Congress amended § 28 of Arizona's Enabling Act, see 49 Stat. 1477, to permit the leasing of mineral lands for a term of 20 years in such a manner as Arizona's Legislature might elect. As a consequence, the Legislature, by Chapter 78 of the Laws of 1941, repealed § 11–314 A.C.A.1939, and adopted §§ 11–1601 through 11–1609, A.C.A.1939, 1952 Cum. Supp.

An examination of §§ 11–1601 through 11–1609 reveals that the Legislature did not specifically provide that sand, rock and gravel were minerals or mineral deposits subject to location as a mineral claim. The proviso under § 11–1604 pertaining to the payment of royalties of no more than five cents per cubic yard for sand, rock and gravel at best only by inference suggests that the Legislature has classified those products of the land as minerals.

We think, however, that there is another purpose in the enactment of the proviso to be found in § 11–1604. By § 11–1605, the Legislature conferred upon every mineral lessee certain rights. By paragraph 3, subparagraph 4 thereof, a mineral lessee may cut and use timber and stone upon a mineral claim "for construction of necessary improvements or for drains, roadways, tramways, supports or other necessary purposes." We think the proviso in § 11–1604 is aimed at the use of sand, stone and gravel where used for drains, roadways, tramways, supports or other purposes incidental to the mining of minerals upon a claim or as an adjunct to the mining of minerals upon a claim.

We are satisfied that the views we have expressed here are consistent with and keep Arizona in line with the mining policy of the United States Government. Under the title "Surface Resources", 30 U.S.C. § 601, the Secretary of the Interior by rules and regulations is directed to dispose of sand, stone and gravel and other materials such as pumice, cinders, clay and timber and forest products on the public lands of the United States. By § 602, he is directed to dispose of these materials to the highest responsible, qualified bidder, and by § 611, Congress specifically provided:

"No deposit of common varieties of sand, stone, gravel, pumice, pumicite, or cinders * * * shall be deemed a valuable mineral deposit within the meaning of the mining laws of the United States so as to give effective validity to any mining claim * * *."

Arizona's laws as herein construed are consistent with and conform to the laws and policies governing the public lands of the United States.

■ One further matter. It is to be noted that A.R.S. § 27–234, subsec. C (since amended) provides that the royalty for sand, rock and gravel shall not be more than five cents per cubic yard. Placing such a limitation upon the products of State lands is in direct contravention of the language used in § 28 of the Enabling Act, supra, and, consequently, is a breach of trust and void. Lassen v. Arizona ex rel. Arizona Highway Department, 385 U.S. 458, 87 S.Ct. 584, 17 L.Ed.2d 515.

Judgment of the Superior Court reversed, and the order of cancellation by the State Land Commissioner is reinstated.

HAYS, V. C. J., and UDALL, LOCKWOOD and CAMERON, JJ., concur.