606 P.2d 21

Sylvester AMBURGERY and Hazel E. Amburgey, husband and wife, Appellants,

v.

HOLAN DIVISION OF OHIO BRASS COMPANY, a New Jersey Corporation, Appellee.

No. 14412–PR.

Supreme Court of Arizona, En Banc.

Jan. 4, 1980.

Rehearing Denied Feb. 13, 1980.

Taylor & Kamper by Timothy J. Kamper, Phoenix, for appellants.

Mesch, Marquez, Clark & Rothschild by John K. Mesch, Tucson, for appellee.

STRUCKMEYER, Chief Justice.

This action was brought by Sylvester Amburgey to recover damages for injuries which he suffered when he came in contact with an electric current while working for Tucson Gas and Electric Company. From an adverse jury's verdict he brings this appeal. The Court of Appeals reversed. *Amburgey v. Holan Division of Ohio Brass Company*, 124 Ariz. 534, 606 P.2d 24 (App.1979). We accepted review. Opinion of the Court of Appeals vacated. Judgment of the Superior Court affirmed.

Appellant was injured while working from a bucket attached to the boom of a truck crane. He asserts that he was injured when an electric current passed through the boom of the crane to the interior of the insulated bucket in which he was working. The Holan Division of the Ohio Brass Company, the manufacturer of the boom and bucket, was made defendant in the court below on the theory that the insulated bucket was defectively designed and dangerous to a user.

■ It is settled in Arizona that in order to recover on the theory of strict products liability, a plaintiff must prove (1) the product was defective, (2) the defect was unreasonably dangerous, and (3) the injuries were proximately caused by the defect. *See Vineyard v. Empire Machinery Co., Inc.*, 119 Ariz. 502, 505, 581 P.2d 1152, 1155 (App. 1978); *Rogers v. Unimac Co., Inc.*, 115 Ariz. 304, 307, 565 P.2d 181, 184 (1977).

■ To prove that a product is "defective" the plaintiff must show that it was being used in an intended, normal and anticipated manner. *Cf. Eshbach v. W. T. Grant's & Co.*, 10 Cir., 481 F.2d 940 (intended or foreseeable use); *Beetler v. Sales Affiliates*, 7 Cir., 431 F.2d 651 (intended use); *Stammer v. General Motors Corp.*, 123 Ill.App.2d 316, 259 N.E.2d 352 (1970) (intended function); *Farr v. Armstrong Rubber*, 288 Minn. 83, 179 N.W.2d 64 (normal, anticipated use); 1 R. Hursh & H. Bailey, American Law of Products Liability § 4.40, 754 (2d ed. 1974). Whether a product has been used in the way it was intended by the manufacturer goes to the issue of whether the product was defective. A manufacturer may not, of course, restrict its liability simply by asserting the use was not within the intended use. It will be liable where the product is defective when used in a reasonably foreseeable manner. *See Kaczmarek v. Mesta Machine Co.*, 463 F.2d 675, 679 (3d Cir. 1972).

Appellant testified that he was standing inside the bucket and that, while he was working on a grounded wire, an energized wire touched the boom. His theory was that electricity from the energized wire traveled through the boom to the eyebolt on the inside of the bucket to which appellant's safety belt was attached, then through the metal buckle of the safety belt where it touched his left leg, then through his body to the grounded wire. It was appellee's position, established by the testimony of a co-worker who was working in a second bucket, that appellant had his left leg on the rim of the bucket when it made contact with a live wire.

Appellant does not argue that it was reasonably foreseeable that the bucket was intended to be used by a person standing on the rim. Rather, it has been his position throughout that he was standing inside the bucket, using it in the very manner intended by the manufacturer.

■ Appellant's first complaint is addressed to this instruction given to the jury: "In order to prove a defective design, it is necessary to prove that the injury occurred while the product was being used in a way it was intended to be used."

He argues that the instruction was confusing in not telling the jury whether it was the manufacturer's intended use or the user's intended use. But we think this could not have any possible bearing on the outcome of the case.

The court instructed the jury, consistent with the law of products liability, that appellant had the burden of proving the boom or bucket was defective and that the defect was unreasonably dangerous to a user. Consequently, if the jury believed that appellant was standing on the rim of the insulated bucket when his leg made contact with the energized wire, it would be compelled to return a verdict against appellant because, irrespective of any defect in the boom or bucket, the proximate cause of the accident was not the defect but the manner in which the product was being utilized. If, on the other hand, the jury had believed that the appellant was injured while standing inside the bucket, the way the manufacturer intended its product to be used, the intended use was not an issue in the case. To put it another way, neither the manu-

facturer's intended use nor the use reasonably anticipated by the user had any bearing on the jury's determination as to whether the product was defectively designed or unreasonably dangerous.

We hold that on this state of the record, the failure of the trial court to instruct the jury that it was the reasonable, anticipated or foreseeable use of the purchaser was not prejudicial.

Appellant also complains of the trial court's granting of a motion in limine which appellee had urged prior to trial. Appellee sought to exclude any evidence relating to the reason for the discharge of the witness Armando Teyechea by the Tucson Gas and Electric Company. Teyechea had been working in another bucket on the same crane when appellant was injured. About two years after the accident, Teyechea lost his job with the Tucson Gas and Electric Company because he falsified a time record. Appellant urges that because Teyechea falsified this record, the jury could conclude that he was untruthful and that this would tend to discredit his testimony that appellant was standing on the rim of the bucket.

We hold that the trial court did not err. Specific acts of misconduct cannot be shown to impeach a witness' credibility unless the misconduct results in a conviction for a felony. See M. Udall, Arizona Law of Evidence §§ 66 and 68, pages 100 and 107. Nor do we believe that the discharge of Teyechea establishes a motive for him to testify against appellant. We note that trial of this case was prior to the adoption of the Arizona Rules of Evidence.

Judgment of the Superior Court affirmed; opinion of the Court of Appeals vacated.

HOLOHAN, V. C. J., and HAYS, CAMERON and GORDON, JJ., concur.