868 P.2d 355

**Michael Todd GIBBS and Vicky Gibbs, husband and wife, Plaintiffs–Appellees,**

v.

**The O'MALLEY LUMBER COMPANY, an Arizona corporation; Olympia Tools, Inc., a foreign corporation, Defendants–Appellants.**

No. 1 CA–CV 91–0312.

Court of Appeals of Arizona, Division 1, Department B.

Feb. 1, 1994.

Law Offices of Michael E. Bradford by Michael E. Bradford, Phoenix, for plaintiffs-appellees.

Jennings, Strouss & Salmon by John A. Micheals, James M. Ackerman and John J. Egbert, Phoenix, for defendant-appellant O'Malley Lumber Co.

Thomas, Burke & Phillips, P.C. by Benjamin C. Thomas, Phoenix, for defendant-appellant Olympia Tools.

Bess & Dysart, P.C. by Donald R. Kunz and Brad K. Keogh, Phoenix, for defendant-appellant Olympia Tools, Inc.

## OPINION

NOYES, Judge.

Appellants O'Malley Lumber Co. (O'Malley) and Olympia Tools, Inc. (Olympia) appeal from a 1.35 million dollar jury verdict in favor of Appellees Gibbs in this product liability case. We have jurisdiction pursuant to Arizona Revised Statutes Annotated (A.R.S.) sections 12–120.21(A)(1) (1992) and –2101(B) (Supp.1993).

### I.

The product at issue was a thirty-six inch "bungee" cord, an elasticized cord with metal hooks on each end. A few days before his injury, Michael Gibbs had purchased the cord from O'Malley, who had purchased it from Olympia, who had imported it from Taiwan. The injury occurred when Michael was stretching the cord across the bed of a pickup truck to secure a load of building material. He had anchored one hook on the pipe rack in the bed of the truck and was stretching the cord to the other side of the truck. Suddenly, the hook being pulled against straightened out and the cord fired the

straightened hook into Michael's right eye. The eye had to be surgically removed.

Appellees Gibbs argued at trial that the cord was defective and unreasonably dangerous because, during normal use, the hooks would fail long before the cord reached its limit of elasticity. They also argued that the cord was defective and unreasonably dangerous because there were no instructions or warnings concerning the relative weakness of the hooks. Appellees presented expert testimony that the cord would fail at about one hundred pounds of load, that the hooks would fail at less than fifty pounds of load, and that the load capacities of the cord and the hooks would be equalized if the diameter of the hooks was increased by .6 millimeter.

Olympia's product catalog claimed that its bungee cords could be stretched to "twice their lengths," which would be seventy-two inches for the cord in this case. The bed of Michael's truck was sixty-nine inches wide. Appellants' misuse theory was based on testimony from Michael that suggested to Appellants that Michael had kept a slack of one foot of cord while stretching the other two feet of cord across five feet of truck bed. Appellants do not argue that Michael misused the cord by stretching it across the truck bed; they argue that he misused the cord by stretching a portion of it well beyond its limit of elasticity and well beyond twice its length.

Appellants O'Malley and Olympia argue on appeal that the trial court erred by refusing to instruct the jury on comparative fault and by admitting evidence of Olympia's and others' knowledge regarding the product. By cross assignment of error, Michael Gibbs and his wife Vicky (Appellees) argue that the trial court erred by instructing the jury on the affirmative defense of product misuse. We conclude that misuse is still an all-or-nothing defense in Arizona, and that there was no error in jury instructions or in the admission of evidence.

## II.

### A.

Appellants O'Malley and Olympia argue that the trial court erred by refusing to instruct the jury on comparative fault. Over the objection of O'Malley and Olympia, the trial court gave the jury the following misuse instruction, a non-comparative fault instruction that is a modified version of *Recommended Arizona Jury Instructions (Civil) 2d*, Product Liability 9:

Defendants are not at fault if defendants prove each of the following:

(1) The product was used by the plaintiffs for purposes or in a manner not reasonably foreseen by the defendants;

(2) The only cause of plaintiffs' injuries was such use or consumption of the product.

This instruction is based on A.R.S. section 12–683(3) as interpreted by the Arizona Supreme Court in *Gosewisch v. American Honda Motor Company*, 153 Ariz. 400, 737 P.2d 376 (1987). Section 12–683(3) provides that a defendant in a product liability action shall not be liable if defendant proves that "[t]he proximate cause of the incident giving rise to the action was a use or consumption of the product which was for a purpose, in a manner or in an activity other than that which was reasonably foreseeable...." A.R.S. § 12–683(3) (1992). *Gosewisch* held that the statute provided an all-or-nothing defense:

We interpret A.R.S. § 12–683(3) to bar recovery if *"the"* proximate cause, meaning the *sole* proximate cause, of the incident giving rise to the injury was either of the actions listed in the statute. The statute does not bar recovery if the circumstances described is *"a* proximate cause" or *"one* of the proximate causes" of the incident.... Instead, A.R.S. § 12–683(3) bars recovery if the *only* proximate cause is one of the circumstances listed.

*Gosewisch*, 153 Ariz. at 407, 737 P.2d at 383 (emphasis added).

Appellants argue that *Gosewisch* is no longer controlling because A.R.S. section 12–2506, which abolished joint and several liability effective January 1, 1988, now requires the trier of fact to determine the relative degrees of fault of all parties. *See* A.R.S. § 12–2506 (Supp.1992). That statute defines fault as "an actionable breach of legal duty, act or omission proximately causing or con-

tributing to injury or damages sustained by a person seeking recovery, including ... products liability and misuse, modification or abuse of a product." A.R.S. § 12–2506(F)(2) (Supp.1992).

Olympia argues that section 12–2506 overrules *Gosewisch* and amends section 12–683(3) by implication. O'Malley argues that section 12–2506 creates a new misuse defense, and that, although the section 12–683(3) misuse defense is an all-or-nothing defense because of *Gosewisch*, the misuse defense created by section 12–2506 is a comparative defense.

It has been observed that "perhaps the most difficult tort question facing courts in recent years has been how to reconcile [the doctrines of strict product liability and comparative negligence] when neither was developed with the other in mind." Mark E. Roszkowski & Robert A. Prentice, *Reconciling Comparative Negligence and Strict Liability: A Public Policy Analysis*, 33 St. Louis Univ.L.J. 19, 21 (1988). Courts across the country are divided on whether comparative negligence principles should be applied in strict liability actions. *See generally id.* at 32–47 (describing the various approaches taken by courts to reconcile comparative negligence and strict liability); Randy R. Koenders, Annotation, *Products Liability: Product Misuse Defense*, 65 A.L.R.4th 263, 291–97 (1988 & Supp.1993) (listing jurisdictions that do and do not apply comparative negligence principles to the misuse defense); Romualdo P. Eclavea, Annotation, *Applicability of Comparative Negligence Doctrine to Actions Based on Strict Liability in Tort*, 9 A.L.R.4th 633, 641–49 (1981 & Supp.1993) (listing jurisdiction that do and do not apply comparative negligence principles in product liability actions).

In deciding whether A.R.S. section 12–2506 overrules *Gosewisch*, amends A.R.S. section 12–683(3), or creates a new kind of misuse defense, we apply the following principles of statutory construction:

First, repeal of statutes by implication is not favored in the law. In *State ex rel. Larson v. Farley*, 106 Ariz. 119, 471 P.2d 731 (1970), we held that if it is reasonably practical, a statute should be explained in conjunction with other statutes to the end that they may be harmonious and consistent; and, if statutes relate to the same subject and are thus *in pari materia*, they should be construed together with other related statutes as though they constituted one law. Unless a statute, from its language or effect, clearly requires the conclusion that the legislature must have intended it to supersede or impliedly repeal an earlier statute, courts will not presume such an intent. *State v. Jaastad*, 43 Ariz. 458, 32 P.2d 799 (1934). Also, when reconciling two or more statutes, courts should construe and interpret them, whenever possible, in such a way so as to give effect to all the statutes involved. *Ordway v. Pickrell*, 112 Ariz. 456, 543 P.2d 444 (1975); *State Land Dept. v. Tucson Rock & Sand Co.*, 107 Ariz. 74, 481 P.2d 867 (1971).

*Pima County v. Maya Constr. Co.*, 158 Ariz. 151, 155, 761 P.2d 1055, 1059 (1988).

We conclude that A.R.S. section 12–2506 does not overrule *Gosewisch*, that it does not amend A.R.S. section 12–683(3), and that it does not create a new kind of misuse defense. The holding of *Gosewisch* is so clear and direct that, surely, if the legislature had ever intended to change either section 12–683(3) or the supreme court's interpretation of that statute, it would have done so explicitly, not by implication. We agree with the trial court's observation that "if the Legislature really intended to change products liability law ... they would have done it in [section] 12–683 not in [section] 12–2506." The text of section 12–683 has not been changed since *Gosewisch* was decided in 1987.

Another reason why the legislature did not intend section 12–2506 to overrule *Gosewisch* is that the statute was enacted before the case was published. Section 12–2506 was enacted by Senate Bill 1036, which was filed in the Office of the Secretary of State on February 13, 1987. *See* 1987 Ariz.Sess.Laws ch. 1. *Gosewisch* was filed by the Clerk of the Supreme Court on April 23, 1987.

Our holding does not render section 12–2506 meaningless regarding product liability law, nor does it create a conflict between sections 12–2506 and –683(3). The inclusion

of "misuse of a product" in section 12–2506(F)(2) has significance apart from, and not inconsistent with, section 12–683(3). Section 12–2509(B) provides that "[i]f an action involves claims for relief alleging both negligence and strict liability in tort," then comparative fault principles apply to the strict liability claims as well, with some exceptions. In this case, section 12–2509 was inapplicable because there were no negligence claims, only strict liability claims. The trial court properly refused to instruct on comparative fault.

### B.

■ Appellees Gibbs argue that there was insufficient evidence for a misuse instruction. This is a close question on the facts here, and recognized as such by the trial court. The misuse defense is available only for uses that are not "reasonably foreseeable." A.R.S. § 12–683(3) (1992). A reasonably foreseeable use is one "which would be expected of an ordinary and prudent purchaser, user or consumer and which an ordinary and prudent manufacturer should have anticipated." A.R.S. § 12–681(4) (1992).

We recall what this Court stated in *Kavanaugh v. Kavanaugh*, 131 Ariz. 344, 641 P.2d 258 (App.1982): "[S]ome abnormal, or unintended uses will not constitute a legal misuse of the product, if they are reasonably foreseeable. This is ordinarily a question of fact for the jury, unless reasonable minds could not differ." 131 Ariz. at 349, 641 P.2d at 263 (quoting W. Kimble & R. Lesher, *Products Liability* § 244, at 279 (1979)).

■ A bungee cord is not useful as such unless it is stretched. A strong argument can be made that an ordinary and prudent manufacturer should anticipate that an unwarned cord user might stretch the cord past failure point of the hooks, if the hooks will fail at half the load the cord will withstand. A strong argument can be made that said manufacturer should anticipate that an ordinary and prudent cord user might stretch the cord, or a portion of the cord, beyond twice its length. Nevertheless, we conclude that the trial court did not err in instructing the jury on the affirmative defense of product misuse. The trial court has a duty to instruct the jury on all legal theories supported by the evidence. *Newell v. Town of Oro Valley*, 163 Ariz. 527, 528, 789 P.2d 394, 395 (App.1990). On appeal, we must view the evidence to support the theory of the party requesting the jury instruction. *Id.* Viewed in this light, Appellants presented sufficient evidence, discussed in Section I of this Opinion, to get to the jury on their theory that a portion of the cord was stretched far beyond its limit of elasticity, far beyond the point that any ordinary and prudent user would have stretched it, and that the hooks, weak as they were in relation to the cord, were adequate to withstand any reasonably anticipated use of the cord. *See Boy v. I.T.T. Grinnell Corp.*, 150 Ariz. 526, 534, 724 P.2d 612, 620 (App.1986) (approving misuse instruction on evidence that the product, a cast-iron pipe fitting, would not have broken unless exposed to four times the amount of proper force).

### C.

■ Olympia contends that, because Appellees made strict liability claims and did not make any negligence claims, evidence of Olympia's knowledge and conduct regarding the cord was irrelevant. The purported erroneous admission of evidence took place during Appellees' cross-examination of the Olympia representative. Counsel asked the representative whether Olympia imposed any quality control standards on the manufacture and production of the bungee cords, whether he knew what the manufacturer's quality control was, and whether Olympia required its manufacturers to perform their own quality control tests. The representative also was asked about his expectations regarding the strength of the hooks and whether, if Olympia had known of the strength capacities, it would have modified the hooks. In addition, he was asked questions regarding how consumers would use the cords, what their expectations would be, and how far they would stretch the cords. Because many of the representative's answers alluded to Olympia's lack of knowledge about the product, Olympia argues that the evidence was unfairly prejudicial. Olympia claims that Appellees "wanted the jury to believe that Olympia

either knew about the risk and did not care or was ignorant of the risk and therefore acted incompetently."

In *Dart v. Wiebe Manufacturing, Inc.*, 147 Ariz. 242, 709 P.2d 876 (1985), the supreme court discussed the tension between negligence and strict liability theories in design defect cases. 147 Ariz. at 246–48, 709 P.2d at 880–82. The court observed that the focus in negligence cases is the conduct of the manufacturer or seller, whereas the focus in strict liability cases is the quality of the product. *Id.* at 246, 709 P.2d at 880. However, the court noted:

> The quality of the product may be measured not only by the information available to the manufacturer at the time of the design, but also by the information available to the trier of fact at the time of the trial. In *Byrns v. Riddell*, 113 Ariz. 264, 550 P.2d 1065 (1976) we quoted with approval
>
> > "[t]he following test of "unreasonable danger": 'whether a reasonable manufacturer would continue to market his product in the same condition as he sold it to the plaintiff *with knowledge of the potential dangerous consequences the trial has just revealed.*' "
>
> This "hindsight" test is generally recommended by the commentators, and by precedent, if the case is to be pursued in strict liability.
>
> The hindsight test has been described as a "prudent manufacturer test" because the factfinder must evaluate the reasonableness of the manufacturer's conduct. However, the *test actually concerns itself with the quality of the product.*

*Id.* at 247, 709 P.2d at 881 (citations and footnote omitted).

Based on *Dart*, the objected-to testimony was relevant to the question whether the product was defective and unreasonably dangerous. Moreover, the objected-to testimony was relevant to the foreseeability issue; A.R.S. section 12–683(3) provides that reasonably foreseeable misuse is not a defense.

We conclude that the trial court did not abuse its discretion in finding that the probative value of the evidence was not sub-stantially outweighed by the danger of unfair prejudice. *See* Ariz.R.Evid. 403; *Readenour v. Marion Power Shovel*, 149 Ariz. 442, 449–50, 719 P.2d 1058, 1065–66 (1986) (applying an abuse of discretion standard and holding that an appellate court may not "substitute its judgment for that of the trial court and utilize Rule 403 to exclude evidence after the trial judge has presumably weighed the factors and decided in favor of admissibility"). The trial court correctly instructed the jury, and we presume that the jury followed the instructions given and did not use the evidence for other than its proper purposes. *See State v. Reynolds*, 125 Ariz. 530, 532, 611 P.2d 117, 119 (App.1980) ("Jurors are presumed to do their duty.").

## D.

Olympia claims that counsel for Appellees violated a pre-trial ruling by 'questioning Olympia's representative about the knowledge and conduct of the foreign corporation that manufactured the cord. The pre-trial ruling prohibited evidence regarding elastic strap products other than the cord involved in this case. The complained-of questions about the foreign manufacturer, however, related to the cord at issue in this case. Moreover, Olympia did not object to the questions as being violative of the pre-trial ruling, and, as discussed previously, the questions were relevant to the design defect claim.

Counsel for Appellees did ask one question that violated the pre-trial ruling. Appellants made a timely objection, the objection was sustained, the question was not answered, and the court gave the jury a cautionary instruction that cured the error caused by the question.

## III.

In conclusion, A.R.S. section 12–2506 does not make misuse a comparative defense in a strict product liability case, *Gosewisch* has not been overruled, and A.R.S. section 12–683(3) has not been amended. Product misuse is still an all-or-nothing defense in Arizona, the evidence supported a misuse in-

struction, and there was no error in jury instructions or in the admission of evidence.

The judgment is affirmed.

GRANT, P.J., concurs.

VOSS, Judge, dissenting. ·

I respectfully dissent.

I agree with the majority that there was sufficient evidence to present to the jury the defense of misuse. However, I agree with Olympia and O'Malley that the trial court erred in instructing the jury that misuse was a defense only if the misuse was the sole proximate cause of Gibbs's injuries. I believe the trial court should have instructed the jury that the principles of comparative fault as contained in A.R.S. section 12–2506 apply to the defense of misuse.

A.R.S. section 12–2506 in relevant part, provides:

> B. In assessing percentages of fault the trier of fact shall consider the fault of all persons who contributed to the alleged injury, death or damage to property, regardless of whether the person was, or could have been, named as a party to the suit. . . .

> C. The relative degree of fault of the claimant, and the relative degrees of fault of all defendants and nonparties, shall be determined and apportioned as a whole at one time by the trier of fact. . . .

> . . . .

> F. As used in this section:

> . . . .

> 2. "Fault" means an actionable breach of legal duty, act or omission proximately causing or contributing to injury or damages sustained by a person seeking recovery, including negligence in all of its degrees, contributory negligence, assumption of risk, strict liability, breach of express or implied warranty of a product, products liability and misuse, modification or abuse of a product.

The trial court based its misuse instruction on A.R.S. section 12–683(3), which provides that a defendant in a products liability action shall not be liable if the defendant proves that "[t]he proximate cause of the incident giving rise to the action was a use or consumption of the product which was for a purpose, in a manner or in an activity other than that which was reasonably foreseeable. . . ." A.R.S. § 12–683(3). In *Gosewisch v. American Honda Motor Company*, 153 Ariz. 400, 737 P.2d 376 (1987), the Arizona Supreme Court interpreted A.R.S. section 12–683(3) as barring recovery by a products liability plaintiff only if the sole proximate cause of the injury was the unforeseeable misuse. *Id.* at 407, 737 P.2d at 383. It could be argued a misuse that is the sole proximate cause of the plaintiff's injuries is not really an affirmative defense, but rather is a failure of one of the necessary elements for the plaintiff's cause of action. The plaintiff in a strict products liability action must prove that the unreasonably dangerous defect in the product proximately caused the plaintiff's injuries. *Brown v. Sears, Roebuck & Co.*, 136 Ariz. 556, 560, 667 P.2d 750, 754 (App.1983). However, if the misuse was the sole cause of the injuries, then the defect could not have been a proximate cause. *See also Amburgery v. Holan Div. of Ohio Brass Co.*, 124 Ariz. 531, 606 P.2d 21 (1980) (holding that to prove a product is defective plaintiff must show that it was being used in an intended, normal and anticipated manner).

However, Olympia and O'Malley argue that the enactment by our state legislature of a comparative fault system altered the "all-or-nothing" nature of the misuse defense embodied in A.R.S. section 12–683(3) and interpreted in *Gosewisch*. Olympia and O'Malley contend that, because A.R.S. section 12–2506 requires that the trier of fact determine the relative degree of fault of the claimant as well as "all others who contributed to an alleged injury," and specifically defines "fault" as including misuse of a product, the legislature expressly intended that misuse be a comparative defense. *See* A.R.S. § 12–2506. I agree. A.R.S. section 12–2506 requires the jury to determine the fault of all persons who *contributed* to the plaintiff's injuries in assessing percentages of fault. As "fault" includes the plaintiff's misuse, this seems to contradict A.R.S. section 12–683(3), which states that misuse is a defense if the

misuse was the sole cause of the plaintiff's injuries, not merely a contributing cause.[1]

Olympia, O'Malley, and Gibbs all cited various rules of statutory construction to aid in interpreting these seemingly conflicting statutes. I prefer the approach taken by the Arizona Supreme Court in *Dietz v. General Electric Company,* 169 Ariz. 505, 821 P.2d 166 (1991), in which the court stated that it would interpret two conflicting statutes within Arizona's Uniform Contribution Among Tortfeasors Act "in such a way as to achieve the general legislative goals that can be adduced *from the body* of legislation in question." *Id.* at 510, 821 P.2d at 171 (emphasis added). Therefore, resolution of the issue in this case requires analysis of the policies and goals underlying the doctrines of comparative fault and strict products liability.

The Arizona Supreme Court in *O.S. Stapley Company v. Miller,* 103 Ariz. 556, 447 P.2d 248 (1968), adopted the doctrine of strict products liability set forth in the *Restatement (Second) of Torts* section 402A. That section provides in relevant part:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

One of the rationales for imposing strict liability is that the consumer has the right to expect safe and merchantable goods and that reputable sellers will stand behind their goods. In addition, public policy demands that the burden of injuries caused by products be placed on those who market them, because those parties are best situated to minimize the risk of harm and may treat the burden as a cost of production against which liability insurance can be obtained. *Restatement (Second) of Torts* § 402A comment c (1965).

However, strict liability is not absolute liability. Before a manufacturer or merchant may be held liable, the plaintiff must prove that the product was defective, the defect was unreasonably dangerous, the defect existed at the time the product left the manufacturer or merchant, and the plaintiff's injuries were proximately caused by the defect. *Brown,* 136 Ariz. at 560, 667 P.2d at 754. In addition, the Arizona courts have recognized various defenses to strict products liability actions. Assumption of risk and unforeseeable misuse are recognized as defenses to such actions. *See O.S. Stapley Co.,* 103 Ariz. at 561, 447 P.2d at 253; *Restatement (Second) of Torts* § 402A comments n, h (1965). Unforeseeable alteration or modification of a product is also a recognized affirmative defense. A.R.S. § 12–683(2). *See Piper v. Bear Medical Systems,* 152 Ariz.Adv.Rep. 58 (App. Nov. 18, 1993). A.R.S. section 12–683(1) also recognizes a "state of the art" defense. However, ordinary contributory negligence, which does not rise to the level of assumption of risk or product misuse, is not a defense under the strict products liability doctrine. *O.S. Stapley Co.,* 103 Ariz. at 561, 447 P.2d at 253.

Arizona Revised Statutes section 12–683 was enacted in 1978 as part of a series of statutes entitled, "Product Liability." *See* A.R.S. §§ 12–681 –686. The legislative goal behind the products liability statutes was apparently to address the "perceived crisis of rising products liability insurance rates" and to promote new product development by regulating products liability law. *Torres v. Goodyear Tire & Rubber Co.,* 163 Ariz. 88, 96, 786 P.2d 939, 947 (1990). The Arizona legislature first adopted a comparative fault

---

1. In my opinion, the treatment of misuse as a comparative defense does not necessarily conflict with A.R.S. § 12–683(3) or *Gosewisch.* A.R.S. § 12–683(3) describes when a plaintiff's recovery may be totally barred because of misuse. The statute does not state that a plaintiff's damages may not be reduced if the plaintiff's misuse was a concurrent cause of the injuries, together with the unreasonably dangerous defect. *Gosewisch* merely reiterated that, pursuant to A.R.S. § 12–683(3), misuse does not bar recovery unless the misuse was the *sole* cause of the injuries. Application of comparative fault principles would reach the same result. The plaintiff's claim would not be barred unless the jury apportioned 100% of the fault to the plaintiff.

system in 1984. *See* A.R.S. §§ 12–2501 – 2509. The 1984 legislation provided a scheme for contribution between joint tortfeasors, and also contained comparative negligence provisions in A.R.S. section 12–2505. That statute allowed a jury to reduce a claimant's damages in proportion to the relative degree of the claimant's fault which proximately caused the injury. One of the general legislative goals of the contribution and comparative fault statutes was to increase the fairness of the tort system *for both* plaintiffs and defendants. *Shelby v. Action Scaffolding, Inc.,* 171 Ariz. 1, 6, 827 P.2d 462, 467 (1992). However, the 1984 enactment left in place the common law doctrine of joint and several liability among defendants. Thus, a defendant who was only partially responsible for causing the plaintiff's injuries could be held liable for all of the plaintiff's damages. Effective January 1, 1988, the legislature enacted A.R.S. section 12–2506, which abrogated joint liability in most cases and established "a system of several liability making each tortfeasor responsible for paying for his or her percentage of fault *and no more.*" *Dietz,* 169 Ariz. at 510, 821 P.2d at 171. Thus, A.R.S. sections 12–2505 and 12–2506 represent the legislature's intent to create a system which truly apportions damages according to the parties' relative degrees of fault.

Arizona's comparative fault statutes apply not only to negligence actions, but also to strict liability actions. *See* A.R.S. §§ 12–2506, –2509(B). Some commentators and courts have criticized the applicability of comparative fault to strict liability actions, arguing that the policies underlying the two concepts are irreconcilable. *See, e.g.,* Mark E. Roszkowski and Robert A. Prentice, *Reconciling Comparative Negligence and Strict Liability: A Public Policy Analysis,* 33 St. Louis Univ.L.J. 19 (1988); *Smith v. Smith,* 278 N.W.2d 155 (S.D.1979); *Daly v. General*

*Motors Corp.,* 20 Cal.3d 725, 144 Cal.Rptr. 380, 575 P.2d 1162 (1978) (dissenting opinions). Nevertheless, it seems a majority of jurisdictions considering this issue have applied comparative negligence or comparative fault principles to strict products liability actions. *See, e.g., Coney v. J.L.G. Industries, Inc.,* 97 Ill.2d 104, 73 Ill.Dec. 337, 454 N.E.2d 197 (1983).

Given that the purpose of a comparative fault scheme such as Arizona's is to apportion the loss according to the contributory conduct of the actors, I agree with Olympia and O'Malley that, in enacting A.R.S. section 12–2506, the legislature intended to amend the all-or-nothing nature of the misuse defense as described in A.R.S. section 12–683(3). The defense of misuse is therefore not only available when the misuse was the sole proximate cause of the plaintiff's injuries, but should be applied according to comparative principles. Where an unreasonably defective product and a plaintiff's misuse of that product were concurrent proximate causes of the plaintiff's injuries, the jury should be permitted to apportion some percentage of the fault to the plaintiff pursuant to A.R.S. section 12–2506, and the plaintiff's recovery should be limited to that portion of his or her damages equal to the percentage of the cause contributed by the product defect.[2] *See Mulherin v. Ingersoll–Rand Co.,* 628 P.2d 1301, 1303 (Utah 1981) (stating that where misuse of plaintiff and defect of product unite as a proximate cause of an injury, both faults should be considered by the jury in determining the relative burden each should bear for the injury). This must be what the legislature intended when it expressly included "misuse of a product" in its definition of fault to be determined and apportioned by the trier of fact. A.R.S. § 12–2506(F)(2). This result also best achieves the legislative goals inherent in a comparative fault system without frustrating the underlying purpose be-

---

**2.** In certain cases, a plaintiff's unforeseeable use of a product may result in a finding that the product was not defective at all or that the defective product did not cause the plaintiff's injuries. In those situations, the misuse should not be compared. Rather, the plaintiff should be denied recovery because his or her case lacks a crucial element. Mark E. Roszkowski and Robert A. Prentice, *Reconciling Comparative Negli-*

*gence and Strict Liability: A Public Policy Analysis,* 33 St. Louis Univ.L.J. 19, 72–75 (1988). However, in those cases where the product is proved to be defective, the defect is a contributing cause of the injury, and the plaintiff's unforeseeable misuse relates to the defect and magnifies it so that the plaintiff's conduct is also a contributing cause of the injury, comparison of fault is appropriate. *Id.* at 75–81.

hind strict products liability. As one court noted:

> The manufacturer's liability remains strict; only its responsibility for damages is lessened by the extent the trier of fact finds the consumer's conduct contributed to the injuries.... Further, the risk associated with the product defect is still spread among all consumers. Only that portion due to plaintiff's own conduct or fault is borne by the plaintiff. Where the allocation of losses properly can be apportioned, we see no reason to spread the cost of the loss resulting from plaintiff's own fault on to the consuming public.

*Coney,* 73 Ill.Dec. at 342, 454 N.E.2d at 202.

Gibbs argues that the application of comparative fault is limited to contributory negligence and assumption of risk pursuant to A.R.S. sections 12–2505 and 12–2509. Although A.R.S. section 12–2505 generally states that the existence of contributory negligence and assumption of risk should reduce a plaintiff's damages rather than completely bar a plaintiff's right to recover, I disagree that the statute prohibits apportioning of a plaintiff's fault due to misuse. A.R.S. section 12–2505 does not limit the type of conduct by a plaintiff that may be compared to assumption of risk and contributory negligence. Where assumption of risk and misuse have both been recognized in Arizona as defenses to products liability actions, I fail to understand why the legislature would have intended that assumption of risk be a comparative defense, but misuse a defense only if the misuse was the sole cause of the plaintiff's injuries.[3] Indeed, the inclusion of misuse in the definition of fault contained in A.R.S. section 12–2506(F)(2) contradicts Gibbs's argument that the legislature intended to limit the comparative defenses to contributory negligence and assumption of risk.

Gibbs also argues that the historical note following A.R.S. section 12–2506, stating that "[n]othing in this act shall be construed to create a cause of action or to eliminate or diminish any defenses or immunities which currently exist, except as expressly provided," supports his argument that misuse is not a comparative defense. However, the result I reach neither creates a cause of action nor diminishes an existing defense or immunity. Rather, I argue that unforeseeable misuse, a defense which existed prior to A.R.S. section 12–2506, may be a comparative defense pursuant to that statute.

Because misuse is a comparative defense, the trial court in this case erred in instructing the jury that misuse was to be considered a defense only if the misuse was the sole proximate cause of Gibbs's injuries and in refusing to give comparative fault instructions with respect to the misuse defense. "[W]here the challenged instructions cut to the very heart of the case and misapply the applicable legal theories, the error must be considered prejudicial." *Dart v. Wiebe Mfg., Inc.,* 147 Ariz. 242, 250, 709 P.2d 876, 884 (1985). In this case, the jury could have found that Gibbs's misuse of the strap was a contributing cause of his injuries, but refused to apply the defense because it was not the *sole* cause of the injuries. I would therefore reverse the trial court's judgment and remand for a new trial.

---

**3.** I recognize that ordinary contributory negligence, as in the plaintiff's failure to discover the defect, is not a defense under the products liability doctrine and so may not be compared. *O.S. Stapley Co.,* 103 Ariz. 556, 447 P.2d 248; A.R.S. § 12–2509(B); *see also Austin v. Raybestos–Manhattan, Inc.,* 471 A.2d 280, 287 (Me.1984) (assumption of risk but not ordinary negligence reduces recovery in strict liability action); *Coney,* 73 Ill.Dec. at 344, 454 N.E.2d at 204 (misuse and assumption of risk will reduce recovery but not simple negligence); *West v. Caterpillar Tractor Co.,* 336 S.2d 80, 90 (Fla.1976) (assumption of risk and misuse may reduce recovery in strict liability action but ordinary negligence will not).