885 P.2d 120

Richard Lopez JIMENEZ and Amanda Q. Jimenez, husband and wife, Plaintiffs/Appellees,

v.

SEARS, ROEBUCK and COMPANY, a foreign corporation, Defendant/Appellant.

No. 2 CA–CV 93–0243.

Court of Appeals of Arizona, Division 2, Department B.

April 29, 1994.

Review Granted on issue A and Denied on other issues Dec. 20, 1994.

Hirsch, Davis, Walker & Piccarreta, P.C. by Carl A. Piccarreta, Tucson, for plaintiffs/appellees.

Snell & Wilmer by Timothy G. O'Neill and Martha E. Gibbs, Phoenix, for defendant/appellant.

## OPINION

HATHAWAY, Judge.

This appeal is taken from a jury verdict for appellees in a personal injury, product liability action. Plaintiff/Appellee Richard Jimenez was injured when a disk sander that he had purchased at a Sears store shattered.

Sears raises three issues on appeal: (1) the trial court erred in refusing to give a comparative fault instruction; (2) a new trial should have been ordered because of juror misconduct; and, (3) the trial court should have admitted evidence of the safety history of the sander. We conclude that a comparative fault instruction should have been given and reverse.

## COMPARATIVE FAULT

The trial court was requested to and did give an instruction based on A.R.S. § 12–683(3) asserting the affirmative defense of misuse if said misuse was the proximate cause of plaintiff's injuries. The trial court refused to give an instruction based on A.R.S. § 12–2506 which would have permitted the jury to consider Richard's misuse of the disk sander, even if such misuse was not the sole proximate cause of his injuries, and to determine the comparative fault of the parties.

This issue has recently been addressed by Division One of this court in *Gibbs v. O'Malley Lumber Co.*, 177 Ariz. 342, 868 P.2d 355 (App.1994), (Voss, J., dissenting). There, as here, the trial court gave an A.R.S. § 12–683(3) misuse instruction but refused to give an A.R.S. § 12–2506 comparative fault instruction. The majority in *Gibbs* affirmed. We believe, however, that the dissent presents a better-reasoned analysis of the relationship between the two statutes. As stated in the dissent, when the legislature enacted a comparative fault system, it altered the "all-or-nothing" nature of the misuse defense of A.R.S. § 12–683(3). A.R.S. § 12–2506 requires that the trier of fact determine the relative degree of fault of the plaintiff as well as "all persons who contributed to the alleged injury," and specifically defines "fault" to include misuse of the product. A.R.S. § 12–2506(F)(2). We read this to mean that the legislature expressly intended that misuse be considered in determining comparative fault, and as the dissent stated in *Gibbs*, "Where an unreasonably defective product and a plaintiff's misuse of that product were concurrent proximate causes of the plaintiff's injuries, the jury should be permitted to apportion some percentage of the fault to the plaintiff pursuant to A.R.S. Section 12–2506...." 177 Ariz. at 350, 868 P.2d at 363.

Accordingly, we hold that the trial court erred in refusing to give a comparative fault instruction. "[W]here the challenged instructions cut to the very heart of the case

and misapply the applicable legal theories, the error must be considered prejudicial." *Dart v. Wiebe Mfg., Inc.,* 147 Ariz. 242, 250, 709 P.2d 876, 884 (1985). The jury here could have found that Richard's misuse of the disk sander was a contributing cause of his injuries, but because it was not the sole cause of his injuries, refused to apply the defense of comparative fault. We therefore reverse the trial court and remand for a new trial.

### JUROR MISCONDUCT

Because we are remanding for a new trial, we need not address this issue.

### SAFETY HISTORY

■ Appellant argues that the trial court erred in refusing to admit evidence of the safety history of the disk sander. In *Jones v. Pak–Mor Mfg. Co.,* 145 Ariz. 121, 700 P.2d 819, *cert. denied,* 474 U.S. 948, 106 S.Ct. 314, 88 L.Ed.2d 295 (1985), the Arizona Supreme Court abrogated the *per se* rule prohibiting the admission of evidence of the absence of prior accidents involving a product in both negligence and strict liability actions.

■ The proponent of product safety evidence has the burden to establish that if there had been prior accidents involving its product, the witness would "probably have known about them." *Id.* at 127, 700 P.2d at 825. The burden of establishing such knowledge has been described as "formidable," *id.,* or "heavy." *Boy v. ITT Grinnell Corp.,* 150 Ariz. 526, 530, 724 P.2d 612, 616 (App.1986).

> Evidence of the lack of prior accidents is no more than evidence that the plaintiff was the first to fall in the hole. It creates a considerable risk of misleading the jury with respect to the purpose for which the evidence is admitted.

*Jones,* 145 Ariz. at 127, 700 P.2d at 825. Appellant had to demonstrate that its experience with the subject disk sander "is so extensive" that if there had been prior problems with the product it "probably would have known about them." *Id.* As the court stated in *Jones:*

> This portion of the evidentiary predicate will, in most cases, be formidable. It is not, however, insurmountable. The defen-

dant may have established a department or division to check on the safety of its products and may have a system for ascertaining whether accidents have occurred from the use of its products. The defendant or its insurers may have made a survey of its customers and the users of its product to determine whether particular uses of the product have produced particular types of injuries. Information may have been compiled by and obtained from governmental agencies such as the Consumer Product Safety Commission, the FAA, the FDA, or the FTC. Defendant may have established a system with its insurers, distributors, or retailers whereby retail customers are encouraged to report accidents, accidents are investigated, and data is compiled. Any of these methods, or others, may produce facts with which the proponent of the evidence may establish that if there had been accidents or near-accidents when the product was used in a relevant manner, defendant probably would have learned of the information and would have it available. Thus, if the import of the evidence is no more than testimony that no lawsuits have been filed, no claims have been made, or "we have never heard of any accidents," the trial judge generally should refuse the offered evidence since it has very little probative value and carries much danger of prejudice.

*Id.*

Sears' witness on this issue was the Director of Product Safety of the Skil Corporation, the supplier of the disk sander. The witness would have testified that he was responsible for maintaining and keeping the files about all accidents and defective products manufactured by Skil Corporation. These reports include all lawsuits and insurance claims. By itself, this would not meet the threshold of *Jones.* It would be in the nature of "we have never heard of any accidents." However, the offer of proof indicated that Skil Corporation did much more.

Skil Corporation manufactures a broad range of power and manual tools and distributes them to thousands of retail outlets, both

nationally and worldwide. Skil's service center personnel impound every tool brought in for service if that tool is reported to have been in an accident or defective. A news clipping service retained by Skil clips any articles mentioning the words Skil Corporation, Emerson Electric (Skil's parent corporation) or any variation synonymous with Skil Corporation from newspapers across the nation and throughout the world.

The Skil sales force is trained to question their customers, e.g., Sears, not only about sales, but also about any accidents involving Skil tools and how they are performing in the field. They are also trained to teach product safety and demonstrate the product to end users. Skil also uses the services of a claims investigation and management organization which has offices throughout the country.

The federal government's National Electronic Injury Surveillance Service system also gathers information about accidents involving various products. In-depth reports are sent to the company whose product is involved. Skil also utilizes the services of and information obtained from the Consumer Product Safety Commission.

Included with every tool sold is a survey card to be used by the end customer to correspond with Skil concerning the performance of the tool. Skil also maintains an "800" telephone number for consumers to call concerning its products. All of the many reports are eventually brought to the office of the Director of Product Safety, who is responsible for investigating all reports of accidents.

The witness would have testified that approximately 200,000 of the disk sanders were sold between 1986 and 1991, and that the same design for the part appellees claim to be defective is used in two other lines of the product. The total number of sanders/grinders sold between 1986 and the time of trial was over 500,000.

We believe the detailed offer of proof by Skil was sufficient to pass the test set forth in *Jones* and that the trial court erred in precluding such evidence.

The judgment for appellees is reversed and the matter is remanded for a new trial.

DRUKE, C.J., and ESPINOSA, P.J., concur.