904 P.2d 861

Richard Lopez JIMENEZ and Amanda
Q. Jimenez, husband and wife,
Plaintiffs/Appellees,

v.

SEARS, ROEBUCK AND COMPA-
NY, a foreign corporation, De-
fendant/Appellant.

No. CV–94–0273–PR.

Supreme Court of Arizona,
En Banc.

Oct. 17, 1995.

Hirsh, Davis & Piccarreta, P.C. by Carl A. Piccarreta, Tucson, for Plaintiffs/Appellees.

Snell & Wilmer by Timothy G. O'Neill, Martha E. Gibbs, Phoenix, for Defendant/Appellant.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears by Scott A. Salmon, Troy B. Froderman, Christopher Robbins, Phoenix, for Amicus Curiae Arizona Association of Defense Counsel.

The Langerman Law Offices by Amy G. Langerman, Richard W. Langerman, Phoenix, for Amicus Curiae Arizona Trial Lawyers Association.

## OPINION

FELDMAN, Chief Justice.

Richard and Amanda Jimenez (Plaintiffs) brought this products liability action against Sears, Roebuck & Co. (Defendant), alleging it sold them a defective and unreasonably dangerous power tool. Defendant asserted the defense of product misuse and asked the trial court to instruct the jury according to the principles of comparative fault contained in A.R.S. §§ 12–2501 to 12–2509, the Uniform Contribution Among Tortfeasors Act (UCATA), so that Plaintiffs' damages could be reduced in proportion to their degree of fault. The trial court refused to so instruct. On review, we must decide whether the 1987 version of UCATA changes misuse from an all-or-nothing defense to one of comparative fault, thus permitting reduction in damages. If so, we must also decide whether that change violates article 2, section 31 of the Arizona Constitution.

We have jurisdiction pursuant to article 6, section 5(3) of the Arizona Constitution and A.R.S. § 12–120.24.

## FACTS AND PROCEDURAL HISTORY

Richard Jimenez bought a hand-held electric disc grinder from Defendant. Before operating it, Richard read the owner's manual, checked that the disc was tightly attached, connected the power cord, and briefly tested the grinder to see that it ran properly. He then used the tool to smooth down a steel weld on the top, flat part of a trailer tongue, stopping every several minutes to avoid overheating the machine. After about 45 minutes' use, the disc shattered, sending fragments into Richard's body and causing serious injury.

Plaintiffs filed a tort action, alleging that the grinder Defendant sold was defective and unreasonably dangerous and proximately caused Richard's injury and Amanda's loss of consortium. Defendant argued that Richard misused the grinder by failing to wear a protective apron while operating the tool, as recommended in the owner's manual, and by positioning the grinder so that the safety guard did not fully shield his body from the spinning grinding disc.

Richard was retired when he bought the hand grinder. Before retirement, he had regularly used hand-held power tools at his job, where he had been instructed on the proper use of grinders. In preparing to use the tool that injured him, Richard followed his habit of wearing a heavy-duty shirt, jeans, hard-toe shoes, gloves, face shield, and cap to protect himself from the sparks and debris that fly off the grinding disc. Although the owner's manual also recommended a protective apron to guard against "flying abrasive particles and sparks," Richard did not wear one because a leather apron would have cost more than the tool. He also did not believe an apron was necessary because he had never been given one at work

and had never before seen or heard of a grinding disc shattering.

While grinding a welding spot on the trailer, Richard used the grinder in several different positions. Defendant claims that Richard used the tool improperly by reaching too far across the trailer tongue and turning the safety guard away from him. Richard denies that he held the grinder too far from his body for proper control and claims that the guard was partially facing him when the disc exploded.

Upon submitting the case to the jury, the trial judge instructed the jury on the defense of product misuse. In pertinent part, the instructions read:

Defendant is not at fault if defendant proves the following:

(1) The product was used ... for a purpose, in a manner or in an activity not reasonably foreseeable by defendant, or contrary to any express and adequate instructions or warnings appearing on or attached to the product, or on its original container or wrapping, and plaintiff knew, or with the exercise of reasonable and diligent care should have known, of the warnings or instructions; and

(2) *Such use ... was the only cause of plaintiff's injury.*

(Emphasis added.) This instruction followed our interpretation of A.R.S. § 12–683(3).[1] *See Gosewisch v. American Honda Motor Co.,* 153 Ariz. 400, 407, 737 P.2d 376, 383 (1987). It entitled Defendant to a verdict if Richard's misuse was the *sole cause* of the injury and allowed Plaintiffs full recovery of their damages if Richard's alleged misuse of the grinder was only a concurrent cause. The trial judge denied Defendant's request to give comparative fault instructions and a form of verdict that tracked UCATA and would have allowed the jury to allocate a

---

1. A.R.S. § 12–683(3) was enacted in 1978 and is part of a group of statutes dealing with product liability. *See* A.R.S. Title 12, ch. 6, art. 9, which reads as follows:

In any product liability action, a defendant shall not be liable if the defendant proves that any of the following apply:

.   .   .   .   .

3. The proximate cause of the incident giving rise to the action was a use or consumption of

the product which was for a purpose, in a manner or in an activity other than that which was reasonably foreseeable or was contrary to any express and adequate instructions or warnings appearing on or attached to the product or on its original container or wrapping, if the injured person knew or with the exercise of reasonable and diligent care should have known of such instructions or warnings.

percentage of fault to Richard—and the judge to then reduce Plaintiffs' damages—if the jury found that Richard's misuse was a concurrent cause of his injuries.[2]

The jury awarded Plaintiffs $112,000 in total damages. After the trial court denied its motion for a new trial, Defendant appealed, arguing, *inter alia*, that the trial judge erred by failing to give the comparative fault instructions. Relying on the dissent in *Gibbs v. O'Malley Lumber Co.*, 177 Ariz. 342, 348, 868 P.2d 355, 361 (App.1994), the court of appeals agreed with Defendant, reversed the judgment, and remanded for a new trial. *Jimenez v. Sears, Roebuck & Co.*, 180 Ariz. 432, 885 P.2d 120 (App.1994). Plaintiffs petitioned for review, raising the following issue:

> Whether comparative fault principles are applicable to the misuse defense in a strict products liability action.

We granted review because the court of appeals' opinions in *Gibbs* and the present case conflict on this important issue of law. *See* Ariz.R.Civ.App.P. 23(c)(4).

## DISCUSSION

### A. Does comparative negligence apply when Defendant raises the defense of misuse in a products liability action?

We first consider whether applying the rules of comparative fault to product misuse confuses that defense with a form of contributory negligence or whether the misuse defense is a different "species." We begin by distinguishing misuse from contributory negligence and assumption of the risk, defenses that have been subject to the rules of comparative fault since UCATA's original enactment in 1984. *See* A.R.S. § 12–2505(A).

### 1. Misuse, contributory negligence, and assumption of risk

Arizona adopted the doctrine of strict products liability to address the problem of consumer injury caused by unreasonably dangerous products, allocating the risk of loss to the manufacturers and sellers of these products. *See Torres v. Goodyear Tire &*

*Rubber Co.*, 163 Ariz. 88, 91, 786 P.2d 939, 942 (1990). A prima facie case of strict products liability is established by showing that when the product left the defendant's control, it was in a defective condition that made it unreasonably dangerous and the defect was *a* proximate cause of plaintiff's injuries. *Gosewisch*, 153 Ariz. at 403, 737 P.2d at 379; *see also O.S. Stapley Co. v. Miller*, 103 Ariz. 556, 559–60, 447 P.2d 248, 251–52 (1968) (adopting strict liability rule of RESTATEMENT (SECOND) OF TORTS § 402A (1965), hereinafter RESTATEMENT).

We have recognized two affirmative defenses in products liability that, if proven, bar a plaintiff's recovery: assumption of risk and product misuse. *O.S. Stapley*, 103 Ariz. at 561, 447 P.2d at 253. However, along with most if not all other courts, we have rejected contributory negligence as a products liability defense. *Id.; see also* Gary D. Spivey, Annotation, *Products Liability: Contributory Negligence or Assumption of Risk as Defense Under Doctrine of Strict Liability in Tort*, 46 A.L.R.3D 240 (1972 & Supp.1994). In *O.S. Stapley* we explained the differences between contributory negligence, assumption of risk, and misuse: (1) "[F]ailure to discover a defect in the product which the plaintiff should, if he was reasonably diligent, have discovered" is contributory negligence; (2) "notwithstanding the discovery of such a defect, [if] the plaintiff nevertheless uses the article" it is assumption of risk; and (3) the plaintiff's use of the product "for certain purposes or in a manner not reasonably foreseen by the manufacturer" is misuse. 103 Ariz. at 561, 447 P.2d at 253.

Contributory negligence is not applicable to strict liability because, under the doctrine of strict liability, "no duty rests upon the ultimate consumer or user to search for or guard against the possibility of product defects." *Id.* On the other hand, a plaintiff who voluntarily and unreasonably encounters a known danger has assumed the risk and cannot recover on a strict liability claim. *Id.* (quoting RESTATEMENT § 402A cmt. n). Misuse differs from assumption of risk in that

---

2. In considering the propriety of the instructions, we consider the evidence in the light most favorable to the giving of the instruction. Thus, because Plaintiffs did *not* argue to the contrary in either the trial court or this court, we assume there was evidence supporting the instruction.

knowledge of a product's defect is not necessary to establish misuse but is essential for assumption of risk. Randy R. Koenders, Annotation, *Products Liability: Product Misuse Defense*, 65 A.L.R.4TH 263 § 33, at 333 (1988). Misuse has been variously referred to as use for a purpose or in a manner that, from the manufacturer or seller's view, was unintended, unforeseeable, unanticipated, unexpected, non-customary, or abnormal. *See id.* These concepts distinguish misuse from contributory negligence, which involves careless use for a proper purpose. *See* RESTATEMENT § 402A cmt. n (1965); D.W. Noel, *Defective Products: Abnormal Use, Contributory Negligence and Assumption of Risk*, 25 VAND.L.REV. 93 (1972).

■ At common law, misuse was intervening conduct so rare and unusual, and thus unforeseeable, that it was treated as a superseding cause to the product defect. W. PAGE KEETON, ET AL., PROSSER & KEETON ON THE LAW OF TORTS § 102, at 711 (5th ed.1984). Because of the extraordinary nature of such conduct, courts tended to view unforeseeable misuse as breaking the chain of causation between the defect and injury. *Id.* Thus, and perhaps counterintuitively, misuse was a superseding cause that, if proved, barred recovery because the defendant's fault in distributing a defective product did not cause the plaintiff's injuries. *Id.*[3] As with assumption of the risk, misuse was an absolute defense to liability.

In 1978, the legislature codified the common-law defense of misuse under A.R.S. § 12–683(3). *Torres*, 163 Ariz. at 96, 786 P.2d at 947. In pertinent part, § 12–683(3) provides that a *"defendant shall not be liable"* when *"the proximate cause"* of the accident *"was a use ... of the product which was for a purpose, in a manner or in an activity other than that which was reasonably foreseeable."* (Emphasis added.) The text of this statute—using the term "the

proximate cause"—arguably preserved the common-law all-or-nothing consequence of misuse and its essential common-law character, in the sense of use for a purpose or in a manner or for an activity neither intended nor reasonably foreseeable by the manufacturer. *See Kavanaugh v. Kavanaugh*, 131 Ariz. 344, 348–49, 641 P.2d 258, 262–63 (App. 1981) (quoting WILLIAM KIMBLE & ROBERT O. LESHER, PRODUCTS LIABILITY § 244, at 270 (1979)).

In *Gosewisch*, we held that under § 12–683(3) misuse is a complete defense only if (1) the plaintiff misused the product and (2) misuse was the sole proximate cause of the injury. 153 Ariz. at 407, 737 P.2d at 383. We construed *"[t]he* proximate cause" language of § 12–683(3) to mean "the sole proximate cause" rather than "a" proximate or contributing cause of the incident that gave rise to the action. *Id.* Thus, under our interpretation of § 12–683(3) in *Gosewisch*, if there was evidence of misuse, it would have been correct to instruct the jury, as in the present case, that misuse bars recovery if it was the sole cause of the plaintiff's injury. *Id.* at 407, 737 P.2d at 383.

Under the comparative fault rules of the 1987 version of UCATA, however, a jury can reduce a plaintiff's damages in an amount proportionate to the relative degree of the plaintiff's fault that proximately caused the injury. A.R.S. § 12–2505(A). If applicable to product liability cases, this of course recognizes the misuse defense in cases in which it is a contributing cause rather than the sole cause of injury. Thus, the jury would be instructed to determine whether the plaintiff's misuse contributed to the plaintiff's injuries and, if so, to compare the plaintiff's share of misuse-causation with the causal contribution of the product's defect. The judge would then reduce the plaintiff's damage recovery by the percentage of cause the jury attributed to the plaintiff. We turn

---

**3.** In general, under Arizona law an "intervening force becomes a superseding cause only when its operation was both unforeseeable and when with the benefit of 'hindsight' it may be described as abnormal or extraordinary." *Rossell v. Volkswagen of Amer.*, 147 Ariz. 160, 168–69, 709 P.2d 517, 525–26 (1985). One might argue, therefore, that under the common law, misuse was a defense only if the defective product was used not only in an unforeseeable manner or for an unforeseeable purpose but in an extraordinarily unreasonable manner from the vantage point of hindsight. Of course, some types of misuse, although unforeseeable, might fall short of being extraordinarily unreasonable.

next, therefore, to the question of whether our comparative fault statutes encompass the defense of product misuse.

## 2. Does the statute contemplate applying comparative fault to misuse?

■ The 1987 UCATA amendments both abolished joint-and-several liability and apparently broadened the scope of torts subject to the rules of comparative fault. Section 12–2506(F)(2) was added to define apportionable fault:

> *"Fault" means an* actionable breach of legal duty, *act or omission proximately causing or contributing to injury* or damages sustained by a person seeking recovery, *including* negligence in all of its degrees, contributory negligence, assumption of risk, strict liability, breach of express or implied warranty of a product, *products liability and misuse, modification or abuse of a product.*

(Emphasis added.) Defendant claims that the inclusion of the emphasized language in the 1987 UCATA definition of fault is a clear legislative mandate to make misuse as described in § 12–683(3) a comparative defense, even if it falls short of the sole cause of the accident. Thus, Defendant argues, § 12–2506 requires that the jury be instructed on comparative fault in a products liability case in which misuse is a factual issue.

Plaintiffs contend that absent a specific legislative pronouncement abolishing the common-law and statutory rule, misuse must continue to be an all-or-nothing defense. They argue that the inclusion of misuse in the "laundry list" of defenses in the UCATA definition of fault does not by itself sufficiently show a change in the legislative policy. They suggest that we ignore those portions of UCATA that refer to the product liability defenses contained in § 12–683 until the legislature expressly modifies or amends the statutes to clarify the interplay of §§ 12–2506(F)(2) and 12–683(3).

Although we agree with Plaintiffs that we should not conjure up legislative intent without some clear pronouncement from the legislature, we reject the suggestion that we should give no effect to the explicit text of a statute that modifies our interpretation of a different but earlier statute dealing with the same matter. Even if the text of the later statute is not clear, in determining whether a statute modifies or repeals another statute, a well-established and most important principle of statutory construction dictates that we interpret a statute "in such a way as to achieve the general legislative goals that can be adduced from the body of legislation in question." *Dietz v. General Elec. Co.,* 169 Ariz. 505, 510, 821 P.2d 166, 171 (1991). We have recognized that the general goal of the present version of UCATA is to make each tortfeasor responsible for *only* its share of fault. *Id.* at 510, 821 P.2d at 171.

It is true that making misuse a comparative defense when it is not the sole proximate cause of the accident contradicts our interpretation of § 12–683(3) in *Gosewisch.* But the current version of § 12–2506 became effective after *Gosewisch* was decided, and we must interpret in light of the words of the later statute even if the result nullifies the interpretation *Gosewisch* gave an earlier statute. *Gosewisch* did not consider the pending amendments to § 12–2506 [4] and interpreted § 12–683(3) in light of the 1984 UCATA version then in effect. The legislature is free, of course, to rewrite statutes. By later including misuse as a category of fault to be apportioned in a products liability case and by abolishing joint-and-several liability, the legislature made misuse a species of comparative fault as surely as it had made contributory negligence and assumption of the risk subject to comparative fault when it included those defenses in the 1984 version of the same act. A.R.S. § 12–2505(A); *see Hall v. A.N.R. Freight System, Inc.,* 149 Ariz. 130, 135, 717 P.2d 434, 439 (1986).

Moreover, § 12–2505(A), the comparative negligence statute, does not limit the application of comparative fault principles to negligence theories. This section instead instructs that *"[i]n an action for personal injury, . . .* liability of the person who caused the injury shall be allocated . . . in direct

---

4. *Gosewisch* was issued April 23, 1987; the UCATA amendments were adopted in February 1987 and became effective after December 31, 1987. Ch. 1, § 5, 1987 Ariz. Sess. Laws 1, 3.

proportion to that person's percentage of fault." (Emphasis added.) When read together, § 12–683(3) and UCATA §§ 12–2505 and 12–2506 require a factual determination of the plaintiff's misuse as a relative degree of fault in allocating causal responsibility in a strict products liability claim. *See Gibbs,* 177 Ariz. at 348, 868 P.2d at 363 (Voss, J., dissenting).

Such an interpretation furthers the general legislative goal embodied in UCATA of allocating fault and thus arguably promoting a tort system fair to both plaintiffs and defendants. *See Shelby v. Action Scaffolding, Inc.,* 171 Ariz. 1, 6, 827 P.2d 462, 467 (1992). Under § 12–2506 as it now stands, each tortfeasor responsible for causing injury to the plaintiff is liable only for its causal contribution *"and no more." Dietz,* 169 Ariz. at 510, 821 P.2d at 171. This does not interfere with the objectives of the strict products liability theory because the harm attributable to the product defect continues to be allocated to those who market the product and the cost of compensation is spread among all consumers. *See Coney v. J.L.G. Indus., Inc.,* 97 Ill.2d 104, 73 Ill.Dec. 337, 342, 454 N.E.2d 197, 202 (1983). We therefore interpret the present version of § 12–2506(F)(2) to encompass product misuse in the jury's allocation of comparative fault. To this extent, we disapprove *Gibbs.*

In so concluding, we are supported by substantial authority. Our state is not alone in applying comparative fault principles to strict liability defenses. The drafters of the third revision of the RESTATEMENT OF TORTS recommend that defenses against product liability plaintiffs be subject to the apportionment rules in jurisdictions that have adopted the comparative responsibility rules. RESTATEMENT (THIRD) OF TORTS § 10, at 261, and § 12, at 300 (Tentative Draft No. 2, 1995). Despite some theoretical criticism of applying comparative fault to strict liability claims,[5] many courts have used comparative fault in strict products liability cases. *See* RESTATEMENT § 12, Reporters' Note at 304–08; Romualdo P. Eclavea, Annotation, *Appli-*

*cability of Comparative Negligence Doctrine to Actions Based on Strict Liability in Tort,* 9 A.L.R.4TH 633 (1988 & Supp.1994); *but see* Koenders, *supra,* A.L.R.4TH at 273, 291–97 (1988) (stating that majority of courts have held that misuse operates as a complete bar to recovery but not squarely addressing comparative fault issue).

Plaintiffs argue that misuse is subject to comparative fault only if both negligence and strict liability theories are advanced in the same action, but not if only strict liability is claimed. This argument is based on the interpretation given § 12–2509(B) by the *Gibbs* majority. Section 12–2509(B) provides:

> If an action involves claims for relief alleging both negligence and strict liability in tort, and if § 12–2505 [comparative negligence] is applied with respect to the negligence claims for relief, the reduction in damages under § 12–2505 shall be applied to the damages awarded against all defendants, except that contributory negligence, as distinguished from assumption of risk, is not a defense to a claim alleging strict liability in tort, including any product liability action, as defined in § 12–681, except claims alleging negligence.

Because the plaintiff alleged strict products liability but not negligence, the *Gibbs* majority concluded that comparative fault for misuse did not apply and held that the trial court did not err in refusing to give comparative misuse instructions. 177 Ariz. at 346, 868 P.2d at 359.

We do not agree with this interpretation of § 12–2509(B) and disapprove *Gibbs* on this point also. We read § 12–2509(B) only as a badly-worded but successful attempt at preserving the common-law rule that contributory negligence is not a defense in strict liability. The statute expressly prohibits reduction of damages for the plaintiff's contributory negligence in a strict liability claim and allows such reduction in a negligence claim. Thus, a comparative fault instruction for misuse, as well as one for assumption of risk, would be proper even if negligence theories

---

5. For policy arguments on both sides of the issue of comparative fault in strict liability, see *Daly v. General Motors Corp.,* 20 Cal.3d 725, 144 Cal.

Rptr. 380, 385–90, 575 P.2d 1162, 1167–72 (1978).

have not been alleged, as in *Gibbs* and the present case.

## B. May the legislature constitutionally apply comparative fault to misuse cases?

■ The amicus Arizona Trial Lawyers Association (ATLA) submits that applying comparative fault principles to the common-law defense of product misuse violates article 2, section 31 of the Arizona Constitution, which provides, "No law shall be enacted in this State limiting the amount of damages to be recovered for causing the death or injury of any person." ATLA argues that because at common law misuse was a defense only if found to be the sole proximate cause of injury, applying comparative fault principles to reduce damages when the misuse is only a concurrent cause reduces the recovery and abrogates plaintiff's common-law right of action, thus violating article 18, section 6 of the Arizona Constitution.[6]

■ As ATLA recognizes, this argument also implicates the constitutionality of UCATA's abolition of joint-and-several liability, accomplished by adoption of A.R.S. § 12-2506 in 1987. Under the common-law rule of joint-and-several liability, a plaintiff could recover all damages from any tortfeasor whose fault contributed to the injury's occurrence. *See Holtz v. Holder,* 101 Ariz. 247, 251, 418 P.2d 584, 588 (1966). Under the present UCATA, however, defendants whose fault contributed to the accident are liable for only the share of damages proportionate to their

causal contribution to the injury. *See* A.R.S. § 12-2506. If changing the misuse defense from an all-or-nothing to a comparative system runs afoul of article 2, section 31 and the corresponding language in article 18, section 6 then, *a fortiori,* the change from joint-and-several to several liability must also be prohibited by the non-limitation language of the two constitutional provisions.[7] Indeed, ATLA urges us to hold both statutes—A.R.S. §§ 12-2505 and 12-2506—unconstitutional. *See* ATLA Supplemental Brief at 10-13.

■ Until now, our cases and those from the court of appeals have skirted these issues. In *Hall,* for instance, we upheld the comparative negligence statute, § 12-2505, against an assertion that it violated article 18, section 5. We did not address the limitation of damages issue. 149 Ariz. at 136-37, 717 P.2d at 440-41. In *Dietz,* we upheld the institution of several liability and the abolition of the joint-and-several principle against constitutional attack because the case involved only the plaintiff's recovery against an employer immune under the workers' compensation law; we did not decide whether the abolition of joint liability in itself limited damages in violation of article 2, section 31 because the issue had not been briefed or argued. 169 Ariz. at 511, 821 P.2d at 172.[8] In this case, on the other hand, the question of misuse has been briefed and argued, and amici representing both plaintiffs' and defense bars filed briefs and participated in oral argument.[9]

---

6. Section 6 provides that "[t]he right of action to recover damages for injuries shall never be abrogated, and the amount recovered shall not be subject to any statutory limitation."

7. The same argument, of course, applies to assumption of risk, an all-or-nothing defense to a common-law strict liability action. To some extent also, the change in contributory negligence from an all-or-nothing defense to the comparative regime effected by § 12-2505 is put in question. It may be argued, however, that at common law a plaintiff guilty of contributory negligence, unlike one guilty of concurrent misuse, never had a legally cognizable right of recovery. Thus, the change to a comparative system did not diminish a plaintiff's recovery. *Hall,* 149 Ariz. at 135, 717 P.2d at 439.

8. Nor has the court of appeals squarely addressed the issue. *See, e.g., Church v. Rawson*

*Drug & Sundry Co.,* in which the court, relying on *Dietz,* upheld the statute imposing only several liability in a case in which "the effect of the statute precluding full recovery is the result of the competing policy embodied in the workers' compensation statute." 173 Ariz. 342, 347, 842 P.2d 1355, 1360 (App.1992).

9. The constitutional issues were not raised in the trial court or the court of appeals but were first advanced in this court by ATLA. We do not ordinarily consider issues not raised in the trial court or court of appeals. *See Dombey v. Phoenix Newspapers, Inc.,* 150 Ariz. 476, 482, 724 P.2d 562, 568 (1986). However, this rule is jurisprudential rather than substantive. When good reason exists, this court may and will entertain such questions. *Id.; Gosewisch,* 153 Ariz. at 406, 737 P.2d at 382; *Ruth v. Industrial Comm'n,* 107 Ariz. 572, 573-74, 490 P.2d 828,

We do not believe that the prohibition against damage limitations is violated by making concurrent misuse a comparative rather than absolute defense. Like instituting a several-only system of liability, the change essentially regulates responsibility for cause rather than limits the damages recoverable. The recovery of those damages caused by the fault of any causal contributor is not limited by either statutory provision; the effect is only to limit each defendant's liability to the damages resulting from that defendant's conduct. *Cf. Aitken v. Industrial Comm'n*, 183 Ariz. 387, 904 P.2d 456 (1995) (workers' compensation carrier's lien may be reduced by share of fault attributable to employer). We do not believe our state constitution forbids this. In fact, the text of article 2, section 31 would seem to provide for this result:

> No law shall be enacted in this state limiting the amount of damages to be recovered *for causing the death or injury of any person.*

(Emphasis added.) [10]

Pragmatically, it is true that § 12–2505 will affect recovery and, in some cases, reduce the amount of recovery from what it would have been when concurrent-cause misuse was not a defense.[11] In some cases, the practical effect may be the opposite, particularly in assumption of risk cases. But the constitutional provision has never been considered a guarantee of a particular amount of recovery. We long ago held that our constitution permits regulations effectively reducing a plaintiff's recovery. *Compare Ruth*, 107 Ariz. at 576, 490 P.2d at 832 (upholding

validity of the statute giving the Industrial Commission a lien on the amount recovered by an injured worker exercising the option to sue a third-party tortfeasor), *and Church v. Rawson Drug & Sundry Co.*, 173 Ariz. 342, 347, 842 P.2d 1355, 1360 (App.1992), *with Kilpatrick v. Superior Court*, 105 Ariz. 413, 466 P.2d 18 (1970) (invalidating under article 2, section 31 a statute limiting the liability of an employee for injury inflicted on a co-employee to the amount allowed by compensation benefits). In *Dietz*, we upheld the constitutionality of a statutory application that permitted the defendants to name an immune employer as a non-party at fault, even though such construction effectively reduced the plaintiff's recovery from the other defendants. 169 Ariz. at 510–11, 821 P.2d at 171–72.

Finally, in *Smith v. Myers*, we recently held that the periodic payment statute, A.R.S. §§ 12–581 to 12–594, was unconstitutional because a defendant found liable in a particular amount was effectively permitted to reduce that liability by adopting the statutory periodic payment system, thus reducing the plaintiff's damage recovery to an amount less than the damages awarded as a result of that defendant's conduct. 181 Ariz. 11, 887 P.2d 541 (1994). The question in this case is different: Can the legislature regulate a tort action even though such regulation may—and in a few cases no doubt will—adversely affect the computation of damages that the plaintiff recovers? To answer in the negative is to exclude the legislature from any meaningful enactment because almost any statute dealing with tort actions will affect the amount or

---

829–30 (1971). This case is one of the rare exceptions to the general waiver rule. The issues raised by the constitutional argument are fundamental, affect an entire body of legislation, and have been advanced in other cases but not squarely decided. We believe that the system is best served by considering and settling these questions. Accordingly, we entertained oral argument on the constitutional issue and received supplemental briefing.

10. We recognize that the limitation of damage clause to article 18, section 6 does not contain the italicized language, but we believe the two provisions must be read together and are intended to accomplish the same result.

11. We think, however, the change is more theoretical than practical. Juries in strict products liability actions will still be asked to decide whether the plaintiff has proved a product defect and whether the defendant has proved misuse. If there is no evidence of either, comparative fault instructions will plainly be unnecessary. Also, where misuse is so remarkable that it negates the proximate cause element of the plaintiff's case, it is a superseding cause and no case for comparison exists. If both have been proven, depending on the nature of the defect and the plaintiff's conduct, comparative fault instructions may be appropriate.

potential of recovery.[12] But the legislature has "a constitutional role [in tort law] and may regulate, so long as it does not abrogate." *Hazine v. Montgomery Elevator Co.,* 176 Ariz. 340, 346, 861 P.2d 625, 631 (1993) (Feldman, C.J., specially concurring); *see also Boswell v. Phoenix Newspapers, Inc.,* 152 Ariz. 9, 19 n. 22, 730 P.2d 186, 196 n. 22 (1986).

We go only so far as to state the following: neither article 2, section 31 nor article 18, section 6 of our constitution is offended by the imposition of a statutory regime that recognizes defenses existing at common law and subjects them to a comparative fault analysis, thereby limiting each defendant's liability to the amount of damages attributable to that defendant's causal contribution. Thus, both the change in the misuse statute and the abolition of joint-and-several liability pass constitutional muster.

**C. Under the facts of this case, did the trial court err in refusing a comparative fault instruction?**

■■■■ If the facts did not warrant an instruction on comparative fault, then, of course, refusing that instruction would not have been error.[13] As indicated earlier, we believe, as does Justice Zlaket, that there is a difference between contributory negligence, which is not a defense in a strict product liability action, and misuse, which is a defense. *See* Special Concurrence by Zlaket, J., Op. at 401, 904 P.2d at 871. Whether theoretically correct or internally contradictory, the misuse doctrine was based on the concept that the purpose to which the product was put was not only unforeseeable but broke the chain of causation. Obviously, therefore, not every improper use of a product will constitute misuse rather than contributory negligence.[14] Careless and

thus improper handling or operation of the product is negligent use but not misuse. Contrary to the statement made in the last sentence of Justice Martone's special concurrence, we do *not* hold that foreseeable misuse or contributory negligence is a defense in a strict products case. The facts in this case may not qualify as misuse. We note, however, that until we asked for supplemental briefs on this issue, Plaintiffs did not object to the misuse instruction on the theory that it was unwarranted by the facts but only on the statutory interpretation grounds discussed in part A(2) above. We therefore believe that the issue is not before us and, for purposes of this appeal, assume that the instruction was factually warranted.

## CONCLUSION

We conclude that A.R.S. § 12–2505, the statute providing for comparative fault, includes product misuse in a strict liability case, previously only an absolute defense at common law. Although this may diminish a plaintiff's recovery in some cases, we believe it is a regulation of cause rather than a limitation on damages. Because misuse was always a defense to such actions at common law, this regulation does not violate article 2, section 31 or the limitation clause of article 18, section 6. On this record, therefore, the trial court erred in refusing to give the jury comparative fault instructions on the statutory defense of product misuse.

We vacate that part of the court of appeals' opinion addressing the issues considered in this opinion and remand to the superior court for further action consistent with this opinion.

MOELLER, V.C.J., and CORCORAN, J., concur.

---

12. For instance, a change in the collateral source rule that eliminates collateral benefits reduces the plaintiff's recovery by the amount of damages paid by non-party sources. *Eastin v. Broomfield,* 116 Ariz. 576, 584–85, 570 P.2d 744, 750–51 (1977) (holding that statute abolishing collateral source rule in medical malpractice does not unconstitutionally limit recovery). *Compare Barrio v. San Manuel Div. Hosp.,* 143 Ariz. 101, 692 P.2d 280 (1984) (invalidating special statute of limitation for minor plaintiffs in medical mal-

practice actions because it did not provide plaintiff with a reasonable election of remedies).

13. We asked the parties to brief the question of whether the facts warranted such an instruction.

14. Any other view would tend to blend misuse and contributory negligence, raising serious questions under § 12–2509(B) and article 18, section 6. *See Hazine,* 176 Ariz. at 344, 861 P.2d at 629.

ZLAKET, Justice, concurring.

I agree that the legislature can and has, in A.R.S. § 12–2506, effectively extended misuse from an affirmative defense that formerly could be employed only where it was the sole proximate cause of a plaintiff's injuries, see A.R.S. 12–683(3) and *Gosewisch v. American Honda Motor Co.,* 153 Ariz. 400, 407, 737 P.2d 376, 383 (1987), to one that is now governed by comparative fault principles. Thus, where misuse is *a,* rather than *the,* proximate cause of an injury-producing event, it can be considered along with the fault of all other contributors in the final assessment of damages. Obviously, where misuse is the sole proximate cause, the former rule continues to apply—there can be no liability on the part of the defendant.

I write separately only to emphasize that the definition of "misuse" remains essentially unchanged and, in my view, quite limited. It is, by statute in Arizona,

> a use or consumption of the product which was for a purpose, in a manner or in an activity other than that which was reasonably foreseeable or was contrary to any express and adequate instructions or warnings appearing on or attached to the product or on its original container or wrapping, if the injured person knew or with the exercise of reasonable and diligent care should have known of such instructions or warnings.

A.R.S. § 12–683(3). Thus, I believe trial judges should resist attempts to characterize every facet of a plaintiff's alleged misconduct as "misuse." Otherwise, the line between true misuse and ordinary contributory negligence, already blurred, will be completely obliterated. As the Chief Justice has indicated, contributory negligence continues to be no defense in strict products liability cases. Today's decision should not be read to suggest otherwise.

I agree with Justice Martone that the statutes in question are anything but clear, but for several reasons cannot subscribe to his conclusion that contributory negligence has now become a viable defense in this type of case. First, A.R.S. § 12–2506 specifically refers to both "contributory negligence" and "misuse." This suggests that the legislature understood the difference and deliberately drew a distinction between the two. We cannot presume redundancy. The well-established rule of construction requires that meaning be given to each word or phrase of a statute, where possible. *State v. Pitts,* 178 Ariz. 405, 407, 874 P.2d 962, 964 (1994).

Second, A.R.S. § 12–683(3), as set forth above, has been with us for more than a decade and a half. There is no support in legislative history or case law for the proposition that any part of this statute is meant to refer to "a species of contributory negligence," *post* at 410, 904 P.2d at 872, or seeks to make traditional notions of such negligence an affirmative defense in products cases. Had the legislature desired to achieve such a result, then or now, it could easily have said so in plain, uncomplicated English. Overturning an entrenched principle of law such as the inapplicability of contributory negligence in strict products liability cases should require nothing less. Thus, in my view, the one thing we should be able to agree on is that the legislature has never established contributory negligence as a defense in such actions. Furthermore, as the majority opinion illustrates, the overwhelming body of law on this subject, here and elsewhere, is solidly to the contrary.

Finally, while the language of § 12–683(3) may be broader than a historical definition of "misuse," it nevertheless remains fairly confined and clearly does not encompass the many forms of contributory negligence that could, if permitted, be raised as a defense in these actions.

MARTONE, Justice, concurring in the judgment.

Because the issues of misuse and contributory negligence are conceptually difficult, and the majority's opinion is contradictory,[1] I write to express my understanding of what

---

1. *Compare ante,* at 403, 904 P.2d at 865 ("this of course recognizes the misuse defense in cases in which it is a contributing cause rather than the sole cause of injury") *with ante,* at 408, 904 P.2d at 870 ("we do *not* hold that foreseeable misuse or contributory negligence is a defense in a strict products case.") If the latter is true, to what does the opinion apply?

we have done and why, where I agree and where I disagree.

Even before *Gosewisch v. American Honda Motor Company*, 153 Ariz. 400, 737 P.2d 376 (1987), misuse occurred when the plaintiff used a product in a way that was unforeseeable. Thus, by definition, whenever there is misuse, the defendant can never proximately cause the injury because it is unforeseeable. *Gosewisch* only made this concept explicit when it said that the misuse statute bars recovery only if misuse is "the only proximate cause." 153 Ariz. at 407, 737 P.2d at 383. Thus, conduct that is genuinely misuse will, by definition, always be the sole proximate cause. It is for this reason that misuse is an all or nothing defense. Because misuse is the sole proximate cause, the product's defect plays no role in causation and therefore, "a defendant shall not be liable." A.R.S. § 12–683.

Let me illustrate. Suppose a handgun has a defect in it. Suppose further that plaintiff uses the handgun as a hammer to drive a nail rather than for the purpose for which it was intended. As the handle of the weapon strikes the nail, it fires and the plaintiff is injured. This is product misuse. This is not contributory negligence. Under these facts, the defendant is not liable as a matter of law. On the other hand, suppose plaintiff mishandles the gun at a firing range. He is not careful about where he points it but the safety is on. Suppose further that because of a product defect, the safety does not work and he is injured. Plaintiff's conduct is contributory negligence, which is not a defense to a strict liability case. Up to this point, there is both conceptual and doctrinal clarity.

The problem arises because misuse is included within the definition of "fault" under A.R.S. § 12–2506(F)(2). Thus comparative principles apply. Yet, if misuse still means the sole proximate cause, comparative principles cannot apply. Therefore, the legislature must mean something other than misuse. But it cannot mean contributory negligence if that is not a defense to a products case. What then is this new species of misuse? Under the court's opinion, this kind of misuse occurs when "it is a contributing cause rather than the sole cause of injury." *Ante,* at 403,

904 P.2d at 865. But as we have seen, this is not misuse at all. But if it is not misuse, and it is not contributory negligence, what is it? Neither the court's opinion nor the other concurring opinion answers this. I do not know how misuse can be less than the sole contributing cause of an injury and not at the same time be contributory negligence. Thus, I believe that our opinion makes some contributory negligence (where a product is not used properly and that improper use is a concurring cause) a defense to a products case, and, unlike the majority, *ante,* at 408 n. 14, 904 P.2d at 870 n. 14, I believe this raises no serious constitutional question.

Consider the case before us. This is simply not a case of misuse. Jimenez was using the grinder for the purpose for which it was intended. The defendant argued that he "misused the grinder by failing to wear a protective apron while operating the tool." *Ante,* at 401, 904 P.2d at 863. But this would be contributory negligence, not misuse of the product. To be sure, a grinder could be misused. For example, if the plaintiff used the grinder as a substitute submergible bilge pump for his boat and electrocuted himself, the grinder would have been misused, and would have been the sole cause of the injury.

Because I do not see how a *foreseeable* misuse (and thus a concurring cause) could be anything other than contributory negligence, if today's decision is to have any practical effect, it means that some form of contributory negligence is a comparative defense to a strict products liability case. This would be compatible with A.R.S. § 12–683(3), because it gives two meanings to the word "misuse." The first is its true meaning, ("The proximate cause of the incident giving rise to the action was a use or consumption of the product which was for a purpose, in a manner or in an activity other than that which was reasonably foreseeable"). But the second is a species of contributory negligence ("or was contrary to any express and adequate instructions or warnings appearing on or attached to the product or on its original container or wrapping, if the injured person knew or with the exercise of reasonable and

diligent care should have known of such instructions or warnings").

While all of this may muddy up the conceptual clarity of the former distinction between misuse and contributory negligence, it may well be that the practical effect will be beneficial. For example, Prosser & Keaton note that "[p]erhaps if comparative negligence had preceded the development of strict liability, contributory negligence would have been recognized as a defense." W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 102, at 712 (5th ed. 1984).

To summarize, true misuse (unforeseeable, sole cause) continues to be an all or nothing defense under § 12–683. Foreseeable misuse (concurring cause) is really contributory negligence, and is now a comparative defense to a products case.