IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

JIE CAO, et al., *Plaintiffs/Appellants*,

*v.*

PFP DORSEY INVESTMENTS, LLC, et al., *Defendants/Appellees.*

No. 1 CA-CV 21-0275
FILED 7-7-2022

Appeal from the Superior Court in Maricopa County
No. CV2019-055353
The Honorable Daniel G. Martin, Judge

**REVERSED AND REMANDED**

COUNSEL

Osborn Maledon PA, Phoenix
By Eric M. Fraser (argued), John S. Bullock
*Counsel for Plaintiffs/Appellants*

Pacific Legal Foundation, Phoenix
By James M. Manley
*Amicus Counsel for Pacific Legal Foundation in Support of Plaintiffs/Appellants*

Woner Hoffmaster Peshek & Gintert, Scottsdale
By Shawna M. Woner, Stephanie Kwan Gintert
*Counsel for Defendant/Appellee PFP Dorsey Investments, LLC*

Carpenter Hazelwood Delgado & Bolen LLP, Tempe
By Edith I. Rudder, Nicholas C. S. Nogami (argued)
*Counsel for Defendant/Appellee Dorsey Place Condominium Association*

---

**OPINION**

---

Presiding Judge Paul J. McMurdie delivered the Court's opinion, in which Chief Judge Kent E. Cattani and Vice Chief Judge David B. Gass joined.

---

**M c M U R D I E**, Judge:

**¶1**        Jie Cao and Haining Xia ("Xias") appeal from the superior court's order upholding the forced sale of their Tempe condominium.[1] The court determined that the sale was permissible under A.R.S. § 33-1228, which allows a supermajority of condominium unit owners to approve the termination of a condominium complex, even over the objection of other condominium unit owners.

**¶2**        In this opinion, we address A.R.S. § 33-1228 and hold that the statute is constitutional when applied to condominium owners who bought a condominium unit subject to terms that incorporate the statute. We also hold, however, that if there have been substantive post-purchase changes to the statute, the version of the statute in place at the time of purchase controls.

**¶3**        Here, the superior court applied the August 2018 version of A.R.S. § 33-1228 rather than the version in effect when the Xias bought their condominium unit. As a result, because the previous version of the statute potentially provided greater protections to minority shareowners, we reverse and remand.

**FACTS AND PROCEDURAL BACKGROUND**

**¶4**        In 2007, a developer completed construction on the Dorsey Place Condominiums ("Dorsey Place"), a condominium complex in Tempe. The developer recorded a condominium declaration ("Declaration"), establishing the property's terms, covenants, conditions, and restrictions ("CC&Rs"). Anyone who acquired an ownership interest in the condominium complex was subject to the Declaration, which referred to

---

[1]    The notice of appeal also named Stone Xia as an appellant, but he did not file an opening brief. Thus, he is dismissed as a party to this appeal. *See* ARCAP 15(a)(1).

state regulations affecting condominium ownership. In January 2018, the Xias bought a unit at Dorsey Place. Under the warranty deed[2] and the Declaration, the Xias took the unit subject to its CC&Rs.

**¶5**        In November 2018, PFP Dorsey acquired 90 of the 96 units at Dorsey Place. Other individuals owned the remaining units. Under the Declaration, each unit owner is a member of the Association, and each unit equates to one vote within the Association. Thus, the Xias held one vote, as did the other unit owners, while PFP Dorsey commanded 90 votes within the Association.

**¶6**        In March 2019, the Association notified its members it would be calling a meeting to discuss terminating the condominium. The notice gave members five appraisal reports and a draft termination agreement proposing to sell the entire condominium to PFP Dorsey for over $22 million. The appraisal reports listed the appraised values of five unit types, and the Xias' unit type was valued at $234,000.

**¶7**        The Association held the meeting on April 4, where it presented its members with a modified termination agreement proposing instead to sell "all portions of and interest in [Dorsey Place] not already owned by PFP [Dorsey], to PFP [Dorsey], upon termination of the Condominium." The agreement described the purchase price as the aggregate fair market value of the six units to be bought. An independent appraisal would determine each unit's fair market value, but the agreement set forth a process for disapproving owners to obtain another appraisal.

**¶8**        According to the Declaration, the condominium could "be terminated only by the agreement of Unit Owners of Units to which at least ninety percent (90%) of the votes in the Association are allocated." PFP Dorsey was the only member of the Association to sign the termination agreement, but with nearly 94% of the votes, it ratified the termination and sale on April 9. The Association recorded a warranty deed[3] with the Maricopa County Recorder's Office, transferring the title of the Xias' unit to

---

[2]        We take judicial notice of the Xias' warranty deed, Maricopa County Recording Number 20180103716.

[3]        We take judicial notice of PFP Dorsey's warranty deed, Maricopa County Recording Number 20190923560.

PFP Dorsey. Eventually, PFP Dorsey and the Association changed the locks on the unit and disposed of the Xias' remaining personal property.

**¶9** The Xias sued PFP Dorsey and the Association, seeking a declaratory judgment that the transaction violated the Arizona Condominium Act, A.R.S. § 33-1201, *et seq.*, which governs condominium termination. They argued in the alternative that A.R.S. § 33-1228 is unconstitutional as applied. They sought quiet title, ejectment, imposition of a constructive trust, and further alleged civil trespass, conversion, breach of fiduciary duty, unjust enrichment, and wrongful recording, all arising out of an invalid or unconstitutional forced sale of their unit.

**¶10** PFP Dorsey and the Association filed separate motions to dismiss under Arizona Rule of Civil Procedure 12(b)(6). Each motion argued that the Xias failed to state a claim upon which relief could be granted because PFP Dorsey and the Association strictly complied with A.R.S. § 33-1228. The superior court granted the motions over the Xias' objection.

**¶11** The Xias appealed, and we have jurisdiction under A.R.S. § 12-2101(A)(1).

## DISCUSSION

**¶12** When reviewing a dismissal under Rule 12(b)(6), we take the facts alleged in the complaint as true and view them in the light most favorable to the plaintiffs. *Johnson v. McDonald*, 197 Ariz. 155, 157, ¶ 2 (App. 1999).

**¶13** On appeal, the Xias argue that (1) A.R.S. § 33-1228 is an unconstitutional taking of private property, and (2) A.R.S. § 33-1228 prohibits PFP Dorsey and the Association from forcing a sale of less than the entire condominium for only the appraised value. Both statutory interpretation and constitutionality issues are questions of law, which we review *de novo*. *Koller v. Ariz. Dep't of Transp.*, 195 Ariz. 343, 345, ¶ 8 (App. 1999) (statutory interpretation); *Gallardo v. State*, 236 Ariz. 84, 87, ¶ 8 (2014) (constitutionality).

A. **Arizona Revised Statutes Section 33-1228 Is Not Unconstitutional as Applied Because the Xias Agreed to Grant the Association the Rights, Powers, and Duties Prescribed by the 1986 Version of the Statute.**

**¶14** The Xias argue that A.R.S. § 33-1228 is a taking of private property in violation of the Arizona Constitution. Our Constitution states

that "[p]rivate property shall not be taken for private use," except for certain exceptions inapplicable here. Ariz. Const. art. 2, § 17. Generally, "[t]aking one person's property for another person's private use is plainly prohibited." *Bailey v. Myers*, 206 Ariz. 224, 227, ¶ 12 (App. 2003).

**¶15** A statute that authorizes a private party to take another party's property constitutes a taking. *See Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 421 (1982) (taking had occurred when, without permission of building owner, media company installed cables on apartment building as authorized by statute). Without an exception to the general rule, A.R.S. § 33-1228 is unconstitutional on its face.

**¶16** The Xias argue that A.R.S. § 33-1228 "authorized an impermissible traditional taking" and that without the statute, PFP Dorsey and the Association would have "no authority" to terminate the condominium and force the sale of the Xias' unit. But PFP Dorsey and the Association contend that the authority arises out of contract, so it is not an unconstitutional taking.

**¶17** A condominium may only be created by recording a declaration. A.R.S. § 33-1211. The Declaration here provided that

> [b]y acceptance of a deed or by acquiring any ownership interest in any portion of the Condominium, each Person . . . binds himself . . . to all of the provisions, restrictions, covenants, conditions, rules and regulations now or hereafter imposed by the Condominium Documents and any amendments thereof.

So when the Xias bought their unit in January 2018, they agreed to be bound by the Declaration, which grants the Association the "rights, powers and duties as are prescribed by the Condominium Act." PFP Dorsey and the Association argue that the April 2019 termination and sale was authorized under the Declaration because they strictly followed the provisions of A.R.S. § 33-1228. But PFP Dorsey (and the superior court) applied the current version of the statute, even though it reflects an August 2018 amendment that potentially lessened protections for individual condominium unit owners subject to a forced sale. *See* H.B. 2262, 53d Leg., 2d Reg. Sess. (2018).

**¶18** The Xias argue that, under *Kalway v. Calabria Ranch HOA, LLC*, 252 Ariz. 532 (2022), the 2018 amendments to the statute cannot be

incorporated into the Declaration.[4] They assert that the 1986 version in effect at the time of their purchase is the one that applies here. PFP Dorsey and the Association respond that the Declaration incorporated the 2018 amendments because the Declaration defines the "Condominium Act" as "A.R.S. §33-1201, et seq., as amended from time to time."

¶19        "Although contracts are generally enforced as written, in special types of contracts, we do not enforce 'unknown terms which are beyond the range of reasonable expectation.'" *Kalway*, 252 Ariz. at 544, ¶ 14 (citation omitted) (quoting *Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.*, 140 Ariz. 383, 391 (1984)). CC&Rs, like the Declaration, are subject to this rule. *Id.* at 544, ¶ 14. As a result, we will not "allow[] substantial, unforeseen, and unlimited amendments" to the Declaration, as that "would alter the nature of the covenants to which the homeowners originally agreed." *Id.* at 544, ¶ 15. We "will not subject a minority of landowners to unlimited and unexpected restrictions on the use of their land merely because the covenant agreement permitted a majority to make changes to existing covenants." *Id.* (quoting *Boyles v. Hausmann*, 517 N.W.2d 610, 617 (Neb. 1994)).

¶20        For these reasons, although the Declaration incorporates amendments to the Condominium Act, an amendment will be included only if it falls within the Xias' "reasonable expectations based on the declaration in effect at the time of the purchase." *See Kalway*, 252 Ariz. at 544, ¶ 15. We look objectively at the Declaration to determine whether it gave sufficient notice of a future amendment. *Id.* at 544–45, ¶ 16. The Declaration need not provide notice of the precise details of the amendment, but "it must give notice that a . . . covenant exists and that the covenant can be amended to refine it, correct an error, fill in a gap, or change it in a particular way." *Id.* at 545, ¶ 17. Future amendments, however, "cannot be 'entirely new and different in character,'" otherwise they would

---

[4]        Although the Xias did not raise this argument before the superior court or in their opening brief, they have not waived the argument. Waiver "is procedural, not substantive, . . . and may be suspended at an appellate court's discretion." *Dombey v. Phx. Newspapers, Inc.*, 150 Ariz. 476, 482 (1986). We will consider the Xias' argument because it is founded on *Kalway*, which was issued after all parties had filed their initial briefs, and all parties were later "afford[ed] a full opportunity to brief and argue the issue." *See Jimenez v. Sears, Roebuck & Co.*, 183 Ariz. 399, 406, n.9 (1995).

exceed the reasonable expectations of the owners. *Id.* (quoting *Lakeland Prop. Owners Ass'n v. Larson*, 459 N.E.2d 1164, 1167 (Ill. 1984)).

**¶21**        When the Xias took ownership of their unit in January 2018, the 1986 version was in effect, and A.R.S. § 33-1228(G)(1) provided that

> the respective interests of unit owners are the fair market values of their units, limited common elements and common element interests immediately before the termination, as determined by an independent appraiser selected by the association. The determination of the independent appraiser shall be distributed to the unit owners and becomes final unless disapproved within thirty days after distribution by unit owners of units to which fifty percent of the votes in the association are allocated. The proportion of any unit owner's interest to that of all unit owners is determined by dividing the fair market value of that unit owner's unit and common element interest by the total fair market values of all the units and common elements.

After the 2018 amendments and at the time of the proposed termination of the condominium, A.R.S. § 33-1228(G)(1) provided that

> the respective interests of unit owners are the fair market values of their units, limited common elements and common element interests immediately before the termination and an additional five percent of that total amount for relocation costs for owner-occupied units. An independent appraiser selected by the association shall determine the total fair market values. The determination of the independent appraiser shall be distributed to the unit owners and becomes final unless disapproved within sixty days after distribution to the unit owner. Any unit owner may obtain a second independent appraisal at the unit owner's expense and, if the unit owner's independent appraisal amount differs from the association's independent appraisal amount by five percent or less, the higher appraisal is final. If the total amount of compensation owed as determined by the second appraiser is more than five percent higher than the amount determined by the association's appraiser, the unit owner shall submit to arbitration at the association's expense and the arbitration amount is the final sale amount. An additional five percent of

the final sale amount shall be added for relocation costs for owner-occupied units.

Thus, the 1986 version used the fair market value of an owner's unit to calculate the proportion of that owner's interest relative to the entire condominium. But the 2018 version appears to set the fair market value of the unit alone as "the final sale amount" to which the owner is entitled, rather than calculating the owner's proportionate share of the sale price of the condominium as a whole.

**¶22** The Declaration did not provide sufficient notice of such a substantive amendment. It defined the Condominium Act as the condominium statutes "as amended from time to time." This provision only provides notice that the Condominium Act could be amended by the legislature, which cannot provide "fair notice of any enacted amendment." *See Kalway*, 252 Ariz. at 545, ¶ 19 (provision gave insufficient notice when it only stated that the "Declaration may be amended at any time by an instrument executed and acknowledged by the Majority Vote of the Owners"). And the statutory amendments did not merely refine the statutes, correct errors, or fill in gaps, but substantively altered owners' property rights beyond the "owners' expectations of the scope of the covenants." *See Kalway*, 252 Ariz. at 545, ¶ 17. Allowing this provision to amend the Declaration would "allow[] substantial, unforeseen, and unlimited amendments [that] would alter the nature" of the agreement. *See Kalway*, 252 Ariz. at 544, ¶ 15. We conclude, therefore, that the Declaration did not incorporate the 2018 amendments to A.R.S. § 33-1228, and the Xias purchase agreement only granted the Association the rights, powers, and duties prescribed by the 1986 version of the statute.

**¶23** But PFP Dorsey and the Association claim that the Xias could not contract around the 2018 amendments to subsection (G)(1). They cite A.R.S. § 33-1228(K), which states that "[b]eginning on the effective date of this amendment to this section, [August 3, 2018,] any provisions in the declaration that conflict with subsection G, paragraph 1 of this section are void as a matter of public policy." They maintain that the 2018 version must apply here because the legislature "intended the 2018 version to apply to all condominiums, regardless of the language in their declarations." As discussed, a forced termination and sale under the statute is unconstitutional but for an owner's contractual agreement under the declaration. And we cannot read A.R.S. § 33-1228(K) to affect agreements already in place because "no . . . law impairing the obligation of a contract[] shall ever be enacted." Ariz. Const. art. 2, § 25; *see also Hayes v. Cont'l Ins. Co.*, 178 Ariz. 264, 273 (1994) ("[I]f possible this court construes statutes to

avoid rendering them unconstitutional."). *But see Phelps Dodge Corp. v. Arizona Elec. Power Co-op., Inc.*, 207 Ariz. 95, 119, ¶ 101 (App. 2004), *as amended on denial of reconsideration* (Mar. 15, 2004) ("Although the language in the contract clauses of the federal and state constitutions is seemingly absolute, the State can impair contract obligations in the exercise of its inherent police power to safeguard vital public interests.").

¶24 The Xias took ownership of their unit in January 2018 subject to the Declaration, which incorporated the Condominium Act. And substantive amendments to the Condominium Act cannot later be incorporated into the agreement without renewed consent. Thus, the 1986 version of A.R.S. § 33-1228 applies.

B. **The Authority Granted to the Association Must Be Analyzed Under the 1986 Version of A.R.S. § 33-1228.**

¶25 The Xias also argue that A.R.S. § 33-1228 does not authorize the Association to sell the contested unit to PFP Dorsey because, under their interpretation, the statute requires that (1) any sale of condominium property must include the entire condominium, and (2) the Association must sell the property on the most favorable terms and distribute the sale's proceeds in proportion to their interests as determined by appraisals.

¶26 The primary goal of statutory interpretation is to "find and give effect to legislative intent." *Secure Ventures, LLC v. Gerlach*, 249 Ariz. 97, 99, ¶ 5 (App. 2020). We start with the statute's plain language and give its words their ordinary meaning. *Id.* In doing so, we read the statute's words in context. *See J.D. v. Hegyi*, 236 Ariz. 39, 40–41, ¶ 6 (2014). "If the statute is subject to only one reasonable interpretation, we apply it without further analysis." *Glazer v. State*, 237 Ariz. 160, 163, ¶ 12 (2015). But if the statute is ambiguous, we may consider many different factors, including "the context of the statute, the language used, the subject matter, its historical background, its effects and consequences, and its spirit and purpose." *Wyatt v. Wehmueller*, 167 Ariz. 281, 284 (1991).

¶27 In 1985, the Arizona Legislature adopted a version of the Uniform Condominium Act. *See* 1985 Ariz. Sess. Laws, ch. 192, § 3. When a statute is based on a uniform act, we may infer that the legislature "intended to adopt the construction placed on the act by its drafters." *UNUM Life Ins. Co. of Am. v. Craig*, 200 Ariz. 327, 332, ¶ 25 (2001) (quoting *State v. Sanchez*, 174 Ariz. 44, 47 (App. 1993)). We note, however, that our legislature declined to adopt certain provisions of the uniform act, which likewise guides our interpretation.

### 1. Arizona Revised Statutes Section 33-1228(C) Allows a Termination Agreement to Include a Provision for the Sale of Any Portion of the Condominium.

**¶28**     The Xias argue that A.R.S. § 33-1228(C) prohibits the sale of less than the entire condominium. Although the Xias originally made this argument under the 2018 version of the statute, the legislature did not substantively amend the subsections referenced in this argument. As a result, we will address the argument here.

**¶29**     Section 33-1228(C) reads:

> A termination agreement may provide that all the common elements and units of the condominium shall be sold following termination. If, pursuant to the agreement, any real estate in the condominium is to be sold following termination, the termination agreement shall set forth the minimum terms of the sale.

The plain language of the first sentence allows a termination agreement to provide for the sale of all the common elements and units. In the context of A.R.S. § 33-1228, this sentence gives an association, via a termination agreement, the power to contract for the sale of the entire property, including the property of unit owners who object to the termination and sale. *See* A.R.S. § 33-1228(A), (B) (contemplating a termination agreement approved by less than all unit owners); A.R.S. § 33-1228(D) (contract for sale binds owners of the property to be sold upon approval under subsections A and B); *see also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 167–69 (2012) ("Context is a primary determinant of meaning," and all of a statute "provides the context for each of its parts.").

**¶30**     The Xias argue that A.R.S. § 33-1228(C) requires that "[i]f . . . any real estate is to be sold, it must all be sold." But the subsection's first sentence does not require anything; the language is permissive. *See* A.R.S. § 33-1228(C) ("A termination agreement *may* provide that all the common elements and units of the condominium shall be sold.") (emphasis added); *see also* Scalia & Garner, *supra*, at 112 ("May" is a permissive word and "permissive words grant discretion."). In the second sentence, the legislature contemplated an agreement under which "*any* real estate in the condominium is to be sold." A.R.S. § 33-1228(C) (emphasis added). And the only requirement imposed is that "the termination agreement shall set forth the minimum terms of the sale." *Id.*; *see also* Scalia & Garner, *supra*, at 112

(Used correctly, "shall" is mandatory, and "[m]andatory words impose a duty.").

¶31        The statute thus permits but does not require a sale to include the entire condominium. And nothing in the statute prohibits the sale of less than the whole condominium. As a result, we read the statute to allow a termination agreement to provide for the sale of less than all the units and common elements.

### 2.    The Superior Court Dismissed the Xias' Complaint Based on an Inapplicable Version of A.R.S. § 33-1228.

¶32        The Xias also argue that the Association owed them a fiduciary duty to act in their best interests and sell the property on the best terms possible. They argue that A.R.S. § 33-1228(D) creates a fiduciary relationship by vesting title to their property in the Association as trustee.

¶33        Under A.R.S. § 33-1228(D), "[i]f any real estate in the condominium is to be sold following termination, title to that real estate on termination vests in the association as trustee for the holders of all interest in the units." The statute vests title to the real estate in the association so that "the association has all powers necessary and appropriate to effect the sale." A.R.S. § 33-1228(D); *see also* A.R.S. § 33-1259 (Third parties may assume an association is acting properly within its capacity as trustee.). As trustee, an association must carry out a sale in good faith, with loyalty, and in the interests of the unit owners. *See Lane Title & Tr. Co. v. Brannan*, 103 Ariz. 272, 278 (1968) ("[T]he trustee owes the beneficiary a duty of undivided loyalty."); A.R.S. § 14-10801 ("[T]he trustee shall administer the trust in good faith, in accordance with its terms and purposes and in the interests of the beneficiaries."); A.R.S. § 14-10802 (trustee owes a duty of loyalty); A.R.S. § 14-10803 (trustee owes a duty of impartiality); *see also* A.R.S. § 14-10815(B) (describing such duties as "fiduciary duties.").

¶34        The Association concedes that it became a trustee to facilitate the sale, but it argues that A.R.S. § 33-1228 only requires the trustee to "carry out the sale that the members of the Association agreed to when they agreed to terminate the condominium." We disagree. By assuming the role of trustee, the Association owed a fiduciary duty to all unit owners. The Association argues that if it owed the unit owners a fiduciary duty, it did not breach the duty because it strictly complied with the requirements of A.R.S. § 33-1228 by including the sale price and protective measures required by A.R.S. § 33-1228(G). The Association thus argues that it properly terminated and sold the condominium.

¶35          The Association relies, however, on the requirements imposed by the 2018 version of the statute. Likewise, the superior court dismissed the Xias' complaint "for the reasons advanced by [PFP Dorsey and the Association]," which included arguments relying on the 2018 version. But as discussed, the Xias only agreed to the 1986 version of the statute. As a result, we vacate and remand to the superior court to apply the 1986 version of A.R.S. § 33-1228 to determine whether the Association breached its fiduciary obligations. Thus, we need not address whether the sale at issue would have fulfilled the Association's fiduciary duty under the 2018 version.

## ATTORNEY'S FEES

¶36          The Xias seek attorney's fees on appeal. Contractual attorney's fees provisions are enforced according to their terms. *Chase Bank of Ariz. v. Acosta*, 179 Ariz. 563, 575 (App. 1994). The Declaration provides that if any unit owner employs attorneys to enforce compliance with the Declaration, the prevailing party has a right to recover its reasonable attorney's fees. Because the Xias are the prevailing party, we award them their reasonable attorney's fees and costs after complying with Arizona Rule of Civil Appellate Procedure 21.

## CONCLUSION

¶37          We reverse and remand the superior court's dismissal of the Xias' complaint.

